Richard W. HOSTROP,
Plaintiff-Appellant,

v.

BOARD OF JUNIOR COLLEGE DISTRICT NO. 515, COUNTIES OF COOK AND WILL AND STATE OF ILLINOIS, a body politic and corporate, et al., Defendants-Appellees.

No. 74–1915.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1975.

Decided Sept. 24, 1975.

Rehearing and Rehearing En Banc Denied Oct. 30, 1975.

570

Elmer Gertz, Chicago, Ill., James Pappas, Chicago Heights, Ill., for plaintiff-appellant.

Anthony Scariano, Chicago Heights, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

TONE, Circuit Judge.

Plaintiff, a former president of a public junior college who was discharged by the college board in July, 1970, brought this civil rights action, alleging that he was wrongfully terminated in violation of his federal constitutional rights of free speech and procedural due process and his contract rights. In a bench trial the District Court found the issues in favor of the defendants. We hold that the District Court's findings of fact on the first amendment issue are not clearly erroneous, but that plaintiff's procedural due process right was violated by the failure of the defendants to afford him a hearing and he is therefore entitled to recover damages against the board but not the individual defendants, who are protected by official immunity. We remand for a hearing on damages, which need not be before a jury.

In his amended complaint against the board and its members, plaintiff asserted, in Count I, a claim for the alleged infringements of his rights described above and, in Count II, a claim for conspiracy to deprive him of those rights. The District Court dismissed this complaint for failure to state a claim upon which relief could be granted, but this court reversed that judgment and remanded for trial. *Hostrop v. Board of Junior College Dist. 515,* 471 F.2d 488 (7th Cir. 1972), *cert. denied,* 411 U.S. 967,

93 S.Ct. 2150, 36 L.Ed.2d 688 (1973) (*Hostrop I*). On the eve of trial the District Court allowed further amendment of the complaint to add a Count III, specifically alleging breach of plaintiff's contract rights. The court refused, however, to permit a jury trial of that claim, no jury demand having been filed for the original claims.

## I.

### First Amendment Rights

*Hostrop I* held that plaintiff had stated a violation of his first amendment rights by his allegations that the primary reason for his dismissal was his writing of the memorandum on the ethnic studies program described in that opinion. 471 F.2d at 491–494. The District Court found as a fact, however, as follows:

" . . . I find that Hostrop's dismissal was not motivated by his expression of views in the Ethnic Studies memorandum. I conclude that, as a matter of fact, his termination was fully justified and was the culmination of a series of confrontations and incidents which include . . . the timing and concealment of the Ethnic Studies memorandum [and seven other listed incidents]."

■■ Even if the exercise of a right protected by the first amendment were only one of several reasons for dismissal, the dismissal would be unlawful, so we consider that possible reason without reference to others. As we construe the District Court's findings, however, plaintiff was not dismissed because of his exercise of first amendment rights. The court's phrase, "the timing and concealment of the Ethnic Studies memorandum," read in the light of the evidence, must be taken as referring to the circumstances surrounding the disclosure of the memorandum to the board: Plaintiff initially gave copies of the memorandum only to his "cabinet," and instructed them not to discuss it with anyone else. Only when he learned that a copy of the memorandum had found its way into the hands of the student newspaper and was to be published the next day did he furnish copies to the board members. The evidence indicates, and the District Court could properly have found, that the board members were disturbed because a memorandum proposing the repudiation of their commitment to continue the ethnic studies program for another year was withheld from them until the fortuitous leak to the newspaper compelled its disclosure to them, which occurred less than three weeks before the date proposed in the memorandum for effectuation of this highly controversial action; and this "timing and concealment" rather than "his expression of views" in the memorandum constituted one of the reasons for the board's action. This we think is the meaning of the District Court's finding, which we cannot say is clearly erroneous. These facts do not show a violation of plaintiff's first amendment rights.

## II.

### Procedural Due Process Right
### Liberty Right

■ This court held in *Hostrop I* that plaintiff had stated a deprivation of liberty under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), in his allegation that the board had damaged his reputation by charging him with lack of veracity, 471 F.2d at 494, but the District Court found from the evidence that Hostrop himself had made public the board's charges when it had no intention of doing so. The court held that his standing in the community was therefore not injured by any action of the board, if it was damaged at all. We agree. Plaintiff's argument that he had to disclose the reasons to quell the rumors which were circulating does not establish that his reputation was injured by board action. Once the board decided to terminate plaintiff, the most it could do to prevent injury to his reputation was to maintain silence as to its reasons. See *Shirck v. Thomas*, 486 F.2d 691, 693 (7th Cir. 1973). The board

is not responsible for plaintiff's decision that it would be better for his reputation to publish the reasons.

*Property Right*

*Hostrop I* also held that plaintiff's complaint alleged facts showing a deprivation of a property right. 471 F.2d at 494. The District Court found, however, that plaintiff had no legitimate claim of entitlement to his job because he had deceived the board members by omitting from the form of renewal contract he submitted to them for approval a clause the earlier contract had contained requiring him to devote full time to his job as president. Defendants assert, as additional reasons that plaintiff does not have such a claim, that plaintiff's contract was void because its term exceeded one year, and that the deletion of the full-time clause prevented the meeting of minds requisite to the making of a contract.

We think plaintiff had a claim of entitlement amounting to a property interest within the meaning of *Board of Regents v. Roth, supra,* 408 U.S. at 577–578, 92 S.Ct. 2701, and *Perry v. Sindermann,* 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), even assuming that, as the District Court found, he deceived defendants by the manner in which he submitted the form for the new contract. Apart from the fact that the earlier contract, covering the period July 1, 1969 to June 30, 1971, would still have been in effect if the new contract had not superseded it, the new contract was at most voidable for fraud, not void. So long as there was a genuine dispute on the issue of fraud, plaintiff had a claim of entitlement that gave him a right to a hearing. The same is true with respect to the issue raised by the contention that there was no meeting of the minds, assuming that issue to be analytically different from the fraud issue.

Defendants' argument that both contracts were void because their terms exceeded one year is also without merit. Even if there were a one-year limitation under Illinois law, a contract would not, we think, be invalid in its entirety but only for the period in excess of one year. But our examination of Illinois law persuades us that the making of a contract for a term in excess of one year was within the authority of the board.

In arguing that both plaintiff's original and superseding two-year contracts were void *ab initio,* defendants rely on Illinois cases holding it beyond the power of a school board to employ teachers for a period beyond a school year, a rule originally based on a construction of the statute, *Stevenson v. School Directors,* 87 Ill. 255, 257–258 (1877), and on the principle that one board should not be able to bind a later board, *id.,* at 258–259; *Davis v. School Directors,* 92 Ill. 293, 296 (1879). In the case at bar, the board, prior to the April 1970 board election, purported to extend plaintiff's contract until June 30, 1972, or two years beyond its term. After the mid-April election, the new board did not object to plaintiff's new contract and permitted him, on July 1, 1970, to commence serving under it. This adoption of the contract by the new board meant that plaintiff had a valid contract at least through June 30, 1971. This is so regardless of whether plaintiff was working under his original (1969–1971) or his superseding (1970–1972) contract.

Moreover, we think that the board was empowered to enter into contracts for a duration of longer than one year. In 1927, the Illinois General Assembly conferred on school boards the power to contract with teachers, principals, and superintendents for a period of three years, after expiration of a two-year probationary period. See *Sloan v. School Directors of District No. 22,* 373 Ill. 511, 26 N.E.2d 846 (1940). In *Sloan* the Illinois Supreme Court determined that the *Stevenson* and *Davis* cases, *supra,* were no longer applicable because "they were decided before the enactment of" the 1927 law. 373 Ill. at 514, 26 N.E.2d at 847. Subsequently the Illinois Supreme Court said of the statute:

"The purpose of the General Assembly in enacting the statute is apparent, for it is in the best interests of the schools that competent and capable teachers be continued in their employment. It adds to the stability of the employment and works to the advantages not only of the public but to the teachers and those employed with the administration of school affairs." *Pack v. Sporleder*, 394 Ill. 130, 140, 67 N.E.2d 198, 203 (1946). The law was later changed to enable school boards, after a probationary period, to contract for "contractual continued service." See Ill.Rev.Stat. ch. 122, § 24–11 (1969).

The tenure statute does not apply to a president of a college, but it was against the background of this statute that the Illinois General Assembly created the Junior College Boards by the Public Junior College Act, Ill.Rev.Stat. ch. 122, § 101–1 *et seq.* (1969).[1] Rather than determining the tenure policy for the junior colleges, as it had done for the public schools, the General Assembly provided that the board itself, which appoints the chief administrative officer, *id.* § 103–26, should "establish tenure policies for the employment of teachers and administrative personnel," *id.* § 103–32. We think that the General Assembly intended, in using this language, not to reinstate for junior colleges the rule of the *Stevenson* and *Davis* cases, but to give the board authority to establish its own policies with respect to tenure, which in its broadest sense includes the limited tenure afforded by a contract calling for a term in excess of one year.

The defendant board has in fact established tenure and employment policies in its Policies and Procedures, paragraphs 4.35, 4.25, and 2.20. Teachers are appointed annually until they receive tenure and then on a continuous basis. Administrative personnel other than the president are appointed subject to the annual recommendation of the college president and approval of the board. The president can be appointed for more than one year:

"The President of the College is selected by the Governing Board and under whatever terms are mutually agreed upon at the time of appointment. It will be the duty of the Board to renew the contract of the President of the College or to notify him in writing prior to the first of January in the last year of his incumbency that his services will not be required after the expiration of his present contract.

The compensation of the President of the College will be fixed by the Board at the time he is appointed. By mutual consent the compensation of the President may be adjusted before the start of any academic year." Policies and Procedures 2.20.

We therefore conclude that under the enabling statute and the board's own rules adopted pursuant to the statute, the board had authority to contract with the president of the college for a period of more than one year.

*Denial of Hearing*

Our review of the evidence leaves us with the definite and firm conviction that plaintiff was never offered a fair hearing on termination, and that, in fact, the board prejudged his case before making any hearing available to him. There can be no real dispute that before the special session of the board on July 23, 1970, when plaintiff was to be afforded a hearing, the board had already decided to terminate him, and had in fact made a commitment to another person to hire that person as interim president. The board having prejudged the matter of plaintiff's termination before the July 23 meeting, and being no longer therefore "a tribunal possessing apparent

1. Here and elsewhere in this opinion we refer to the 1969 edition of the Illinois Revised Statutes because that edition contained the version of the School Code in force at the time of the events in issue here. The changes reflected in the present law, Ill.Rev.Stat. ch. 122, § 101–1 *et seq.* (1973) are not material here. The references to "Junior Colleges" have for the most part been changed to references to "Community Colleges."

impartiality," as required by *Hostrop I,* 471 F.2d at 495, plaintiff did not waive his right to a hearing by absenting himself from that meeting.

The termination of plaintiff's employment without affording him the notice and hearing required by *Board of Regents v. Roth* and *Perry v. Sindermann* is actionable despite the District Court's findings and conclusion, which we do not disturb, that the conduct of plaintiff was such as to constitute cause under state law for termination of his employment. This is made clear by the last sentence of footnote 15 of *Hostrop I,* where the court recognized that despite the existence of "grounds to break an employment contract," doing so "by violating an employee's due process rights to notice and a hearing" is nevertheless actionable. 471 F.2d at 494 n. 15.

### III.

#### The Conspiracy Charge

 Plaintiff contends that, as alleged in Count II of his amended complaint, the board members, in addition to violating his civil rights, conspired to do so in violation of 42 U.S.C. § 1983. The District Court, having found no violation of plaintiff's rights, also found against plaintiff on the conspiracy issue.

The doctrine of civil conspiracy extends liability for a tort, here the deprivation of constitutional rights, to persons other than the actual wrongdoer, W. Prosser, *The Law of Torts* § 46 at 293 (4th ed. 1971), but it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.

"The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts. [Citations omitted.] The charge of conspiracy in a civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in

concert, may be held responsible for any overt act or acts." *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir. 1956), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956).

As stated in *Jones v. Bales,* 58 F.R.D. 453, 458 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir. 1973) (per curiam):

"For a claim under 42 U.S.C. § 1983, a conspiracy is not a vital element. Nevertheless, a conspiracy may be used as the legal mechanism through which to impose liability on each and all the defendants without regard to the person doing the particular act. *Mizell v. North Broward Hosp. Dist.,* 427 F.2d 468, 472–473 (5th Cir. 1970); *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963) [*cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964)]."

In the case at bar plaintiff has shown that defendants agreed and acted in concert in denying plaintiff a hearing. Indeed a board is incapable of acting in any other manner. Each defendant, however, is still only liable for the overt act of depriving plaintiff of his property interest without a hearing, which is the same liability that exists under the substantive charge of Count I. The conspiracy count thus adds nothing to the substantive count.

### IV.

#### Relief for Due Process Violation
#### The Defendant Board

 The defendant board, as distinguished from its members, "is a body politic and corporate" which "may sue and be sued in all courts and places where judicial proceedings are had," Ill. Rev.Stat., ch. 122, § 103–11 (1969); that is, it is a municipal corporation, *Norfolk & W. Ry. Co. v. Board of Education,* 114 F.2d 859, 863 (7th Cir. 1940) (relying upon *Board of Education v. Upham,* 357 Ill. 263, 191 N.E. 876 (1934)).[2] As such it

---

**2.** The board in *Aurora Education Ass'n v. Board of Education,* 490 F.2d 431, 435 (7th Cir. 1973), *cert. denied,* 416 U.S. 985, 94 S.Ct. 2388,

40 L.Ed.2d 762 (1974), which the court said was "not a municipal corporation," was organized under an Illinois statute, now Ill.Rev.Stat.,

is not amenable to suit under 42 U.S.C. § 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); see *Strickland v. Inlow,* 485 F.2d 186, 191 (8th Cir. 1973), *rev'd on other grounds sub nom. Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Plaintiff having alternatively invoked 28 U.S.C. § 1331, however, and the requisite jurisdictional amount being concededly present, the board can be sued under that statute.[3] *Calvin v. Conlisk,* 520 F.2d 1, pp. 8–10 (7th Cir. 1975); see *City of Kenosha v. Bruno, supra,* 412 U.S. at 514, 93 S.Ct. 2222 (1973) (majority opinion) and 412 U.S. at 516, 93 S.Ct. 2222 (concurring opinion of Brennan and Marshall, JJ.); see also Bodensteiner, "Federal Court Jurisdiction of Suits Against 'Non-persons' for Deprivation of Constitutional Rights," 8 Val.U.L.Rev. 215, 224–229 (1974). Accordingly, the board is answerable for the violation of plaintiff's procedural due process right.

### The Defendant Board Members

■ Shortly before oral argument was held in the case at bar, the Supreme Court handed down its opinion in *Wood v. Strickland, supra,* 95 S.Ct. 992 (1975), which laid down the principles we are bound to apply in determining the individual liability of state officers in the position of the individual defendants here. Although that case dealt with board members' individual responsibility for disciplinary proceedings against students, its discussion of immunity is equally applicable to conduct of board members affecting the rights of teachers and administrators. The Court there held that to be entitled to immunity from individual liability for damages on the ground of good faith for an act violating constitutional rights a board member must meet two tests: First, he must be acting, not "with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff]," but "sincerely and with a belief that he is doing right." Second, if he meets the first test, he is liable only "if he knew or reasonably should have known" that his act "would violate the constitutional rights" of the plaintiff. *Id.* at 1000–1001.

■ There is no evidence in the record at bar suggesting that the defendant school board members acted with malicious intent to violate plaintiff's constitutional rights and not sincerely with the belief that they were doing right. The question left after reviewing the facts of record is whether they reasonably should have known that the action they were taking would violate plaintiff's constitutional rights. That question must be answered in the light of the law as it existed in July 1970, when the action was taken. At that time *Pickering v. Board of Educa-*

---

ch. 122, § 10–10 (1973), different from the ones under which the boards in this case and the *Norfolk & Western* case were organized.

**3.** The eleventh amendment does not affect this suit. The Illinois legislature, by permitting the board to be sued "in all courts," appears to waive any immunity a board would otherwise have. Moreover, the eleventh amendment does not extend immunity to political subdivisions of the state. *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Port of Seattle v. Oregon & W. R. Co.,* 255 U.S. 56, 71, 41 S.Ct. 237, 65 L.Ed. 500 (1921); see *Edelman v. Jordan,* 415 U.S. 651, 667 n.12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Compare *Brennan v. University of Kansas,* 451 F.2d 1287, 1290 (10th Cir. 1971), which holds a state university immune under the eleventh amendment because under state law it was an agency functioning as an alter ego of the state. (In Illinois, the Board of Trustees of the University of Illinois is treated as "separate and distinct from the State" and is "no part of the State or State government." *People v. Barrett,* 382 Ill. 321, 343, 46 N.E.2d 951, 962 (1943).) See also, *Aerojet-General Corporation v. Askew,* 453 F.2d 819, 829–830 (5th Cir. 1971), *cert. denied,* 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972). Also compare *Hamilton Mfg. Co. v. Trustees of State Colleges in Colorado,* 356 F.2d 599, 601 (10th Cir. 1966), which was an action on a state debt, and *DeLevay v. Richmond County School Board,* 284 F.2d 340 (4th Cir. 1960), which holds a county school board to be an agency of the state immune under the eleventh amendment.

*tion,* 391 U.S. 563, 574–575, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), holding that a faculty member could not be dismissed for exercising protected first amendment rights, had been decided, and the defendant board members were chargeable with knowledge of the principle established by that case. Apart from whether they should have known of the applicability of the principle to one in plaintiff's position, a question we need not decide, *Pickering* is not applicable because the District Court has found, in findings we cannot say are clearly erroneous, that plaintiff was not dismissed for exercising first amendment rights.

▆▆▆ The constitutional right violated was plaintiff's procedural due process right to a hearing before termination, and it is the status of the law in 1970 with respect to this right upon which the immunity of the board members turns. The first definitive holding that termination of teachers' property interests in their employment contracts with state institutions required due process hearings was *Board of Regents of State Colleges v. Roth, supra,* 408 U.S. at 576–578, 92 S.Ct. 2701. Plaintiff does not argue otherwise. His argument is that the board's own written rules, called "policies," required notice and hearing before termination. The "policies" relied upon, however, did not require a pre-termination hearing under the circumstances of this case and therefore did not put the members of the board on notice that plaintiff was entitled to a hearing, even assuming that knowledge of a rule of the board is to be equated with knowledge of a constitutional principle for present purposes. The first, which concerns non-renewal of the president's contract and requires written notice by January 1 of his final year of a decision not to rehire him, applies to terminations on expiration of a contract, not termination for cause, and therefore did not apply to the situation the board thought it was

confronted with in July 1970. The second "policy," entitled "Dismissal of Tenured Staff," requires written notice and a hearing, if requested, but does not apply to an untenured administrator such as plaintiff.[4] The board's "policies," therefore, afford no support for plaintiff's contention that the board members reasonably should have known he was entitled to a hearing.

We must accept and apply the principle that a school board member is not "charged with predicting the future course of constitutional law," *Wood v. Strickland, supra,* 95 S.Ct. at 1001, quoting from *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Since, as the Court stated in *Strickland,* "[a] compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's [or administrator's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith," 95 S.Ct. at 1001, no compensatory award can be justified by the evidence in the case at bar. See also *Briscoe v. Kusper,* 435 F.2d 1046, 1058 (7th Cir. 1970), in which we said:

> "Although found unconstitutional by this Court, the practices of the Board were nevertheless within the ambit of permissible discretion as it appeared at that time. . . . Under these circumstances, personal liability for damages should not attach, regardless of whether such state action technically contravened the Fourteenth Amendment."

The defendant board members' defense of immunity from liability for money damages must be sustained.

*Relief*

▆▆▆ Having determined that the board's denial of a pretermination hear-

---

**4.** Ill.Rev.Stat. ch. 122, § 103–32 (1969) empowers the board "[t]o establish tenure policies for the employment of teachers and administrative personnel." The policy established by the de- fendant board (Policies and Procedures 2.00) is, "The President of the College serves at the pleasure of the Board."

ing was an actionable wrong for which it, but not its individual members, is answerable, we turn to the question of the form and measure of appropriate relief.

Five years have elapsed since plaintiff's employment was terminated. His employment contract, even if it had continued in force, would long since have expired. Under these circumstances, injunctive relief would be manifestly inappropriate, *cf. Zimmerer v. Spencer,* 485 F.2d 176, 179 (5th Cir. 1973), and we do not understand plaintiff to contend otherwise. Nor, in view of our other holdings, is there any reason for a declaratory judgment.

▆▆▆ Although we conclude that plaintiff is entitled to damages, decision as to the appropriate measure presents problems. The District Court has found, in findings we cannot say are clearly erroneous, that plaintiff was terminated for reasons amounting to just cause. Given the nature of these findings, *viz.,* that certain conduct of plaintiff identified by the District Court "substantially impeded the Board's normal functions, critically impaired the personal working relationship between the parties, and completely destroyed the Board's confidence in Plaintiff's loyalty and abilities," it is inconceivable that even if plaintiff had been accorded his procedural due process rights he would have been allowed to continue in office. We have already pointed out, in holding that the defendant board members are entitled to immunity, that in failing to give plaintiff a notice and hearing they did not act maliciously and, in view of the state of the law in 1970, could not reasonably have been expected to know that they were violating plaintiff's constitutional rights. In view of all these circumstances, justice would not be served and plaintiff would be given a windfall at the expense of the taxpayers of the school district if we were to hold that he is entitled to the same damages that would be recoverable if the contract had been terminated without just cause, although we recognize that one court has adopted this approach, without, however, much

discussion of its reasons, see *Zimmerer v. Spencer, supra,* 485 F.2d at 179. Another court has seen it fit to provide reimbursement up until the time that the constitutional deprivation was adjudicated, see *Horton v. Orange County Bd. of Educ.,* 464 F.2d 536 (4th Cir. 1972), a measure of damages which would render the amount of recovery wholly fortuitous since it would be dependent upon when the District Court could hear the case, and which would encourage dilatory tactics.

The wrong done plaintiff was not the termination of his employment, for that has been determined to have been justified, *cf. Garcia v. Daniel,* 490 F.2d 290 (7th Cir. 1973), but the deprivation of his procedural due process right to notice and a hearing. Plaintiff is entitled to damages for that constitutional violation. Although the amount of damages for such an injury cannot be determined by reference to an objective standard, recovery of non-punitive damages for the deprivation of intangible rights for which no pecuniary loss can be shown is not without precedent. Courts have traditionally assessed such damages for tortious injury. Examples in civil rights litigation include the awarding of damages for the deprivation of voting rights, see *Nixon v. Herndon,* 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927); *Wayne v. Venable,* 260 F. 64 (8th Cir. 1919); for the abridgment of equal opportunities to housing, see *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119 (7th Cir. 1974); *Seaton v. Sky Realty Co., Inc.,* 491 F.2d 634 (7th Cir. 1974); for illegal arrests, see *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965); *Rhoads v. Horvat,* 270 F.Supp. 307 (D.Col.1967); and for violation of the right against unlawful searches and seizures, see *Sexton v. Gibbs,* 327 F.Supp. 134 (N.D.Tex.1970), *aff'd,* 446 F.2d 904 (5th Cir. 1971), *cert. denied,* 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972); *cf. Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). See also *Smith v. Losee,* 485 F.2d 334, 352–353 (10th Cir. 1973) (Doyle J., dissenting). We think the case at bar presents an analogous damage problem.

The question of damages is an issue of fact which should be decided by the trial court. See *Wayne v. Venable, supra,* 260 F. at 66. It is therefore necessary to remand the case for a determination of the damages fairly attributable to the failure to afford plaintiff the due process hearing to which he was entitled. The civil rights cases just cited indicate that the non-punitive damages to be awarded may be special, in the sense that they are related to the particular mental distress or other injury to the plaintiff, and general, in the sense that the damages are inherent in the nature of the wrong. Thus the factors which the trial court should consider in making its award will include the nature of the constitutional deprivation and the magnitude of the mental distress and humiliation suffered by the plaintiff, as well as any other injury caused as a result of being deprived of federally protected rights, but not, in view of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), attorneys' fees. Under the circumstances, plaintiff should also recover his costs, both in the District Court and in this court.

## V.

### Contract Rights

Count III, added to the complaint on the eve of trial, asserts a state-law contract claim against the board. Since damages are measured in the same way under that count and Count I, the two counts are alternatives. We therefore need not rule on liability under Count III unless the District Court erred in striking the jury demand filed with that count, in which case plaintiff would be entitled on remand to a jury trial of the issue of damages.

Plaintiff had not made a jury demand in connection with his original or amended complaints, filed in January and April, 1971. On February 4, 1974, the court set the case for trial on April 29 of that year. On February 20, 1974, over three years after the commencement of the action, plaintiff obtained leave to file an amendment, adding Count III, in which he sought damages for breach of contract and demanded a jury trial. Pursuant to defendants' motion, the court struck the amendment with leave to amend within ten days. Plaintiff did not amend within that time but waited until April 29, 1974, the date set for trial, to seek leave to file a new amendment containing the contract claim and a jury demand. The court granted leave to file the amendment but struck the jury demand as untimely, gave defendants 48 hours to answer, and proceeded to trial on May 2, 1974.

The trial judge may well have had discretion under Rule 15(a), Fed.R.Civ.P., to refuse to allow the amendment on the date set for trial except on condition that the jury demand be withdrawn. *Compare Chicago Pneumatic Co. v. Hughes Tool Co.,* 192 F.2d 620, 631 (10th Cir. 1951); *Parissi v. Foley,* 203 F.2d 454; 455–456 (2d Cir. 1953), *rev'd on other grounds sub nom. Parissi v. Telechron, Inc.,* 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955); and *Bercovici v. Chaplin,* 56 F.Supp. 417, 418 (S.D.N.Y.1944), *with Alcoa S. S. Co. v. Ryan,* 211 F.2d 576, 578 (2d Cir. 1954); *Local 783, Allied Industrial Wkrs. v. General Electric Co.,* 471 F.2d 751, 755–756 (6th Cir. 1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973); and *cf.* 3 J. Moore, *Federal Practice* ¶ 15.08[4] at 907 (2d ed. 1974); 5 *id.* at ¶ 38.41. Plaintiff had failed to present the amendment within the time allowed by previous order of the court, the case was over three years old and had been set for trial almost three months earlier, and the court had allocated time on a busy calendar for a bench trial, not a jury trial, which would be bound to take longer. The court, however, did not strike the jury demand in the exercise of discretion but on the ground that the demand was untimely under Rule 38, Fed.R.Civ.P., as appears from his explanation of the reason for his action:

"The rules clearly provide that if a jury demand is not made in writing at the time the complaint is filed, within

ten days thereafter, your time to demand a jury—or ten days after you file the answer, why it is too late to file a jury demand."

We can hardly affirm an exercise of discretion that did not occur, and therefore must consider whether plaintiff was otherwise entitled to a jury trial.

The controlling question is whether Count III introduced a new issue into the case. Rule 38(b), Fed.R.Civ.P.; 5 J. Moore, *supra,* ¶ 38.41. We think it did not, although the matter is not free from doubt. The amendment seeking damages for breach of contract under rights created by state law did not, as counsel for plaintiff acknowledged in the trial court, allege new subject matter, "just a different theory of law." The amended complaint, in connection with which no jury demand was made, alleged the contracts, plaintiff's performance of his obligations thereunder, and the board's termination "in violation of the Plaintiff's contractual rights, and further in violation of his [constitutional] rights." If the amendment here in issue had not been filed, and we were to conclude from the evidence that plaintiff was entitled to prevail on the contract theory but not on the constitutional theory, we could not say the allegations of the existing pleading were insufficient to allow recovery. Under Rule 8(a), Fed.R.Civ.P., the pleader need not allege the legal theory on which he relies, *Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189, 196 (2d Cir. 1955); 2A J. Moore, *supra,* ¶ 8.14; and under Rule 54(c) he is to be granted any relief to which he is entitled even though he has not demanded it, 2A Moore, *supra,* ¶ 54.62. The allegations of termination in violation of contract right which appeared in the pleading before amendment were sufficient to raise the breach-of-contract issue, from which it follows that the amendment did not raise a new issue. *Cf. Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310–1311 (2d Cir. 1973) (en banc). Accordingly, the District Court did not err in striking the jury demand.

The case is remanded for a hearing on damages.

Affirmed in part and reversed and remanded in part.