UNIFIED SCHOOL DISTRICT NO. 480,
Plaintiff-Appellee,

v.

Lila EPPERSON and Oleta A. Peters,
Defendants-Appellants.

Lila EPPERSON and Oleta A. Peters,
Plaintiffs-Appellants,

v.

J. L. SMALLING et al.,
Defendants-Appellees.

No. 75–1948.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 18, 1976.

Decided March 18, 1977.

Rehearing Denied April 19, 1977.

Robert M. Weinberg, Washington, D.C. (Michael H. Gottesman of Bredhoff, Cushman, Gottesman & Cohen, David Rubin, Washington, D.C., Ward D. Martin and John C. Frieden of Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan., on the brief), for Lila Epperson and Oleta A. Peters, plaintiffs-appellants.

Donald R. Newkirk, Wichita, Kan. (Gerrit H. Wormhoudt and J. Eric Engstrom, Wichita, Kan., of counsel, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., on the brief), for J. L. Smalling, and others, defendants-appellees.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a dispute between Unified School District No. 480, in Seward County, Kansas, and two of its former teachers, Oleta Peters and Lila Epperson. Peters and Epperson had been teaching 11 and 17 years respectively in District No. 480 when they, along with others, were notified by the District on February 9, 1972, that their teaching contracts would not be renewed for the ensuing school year of 1972–73. Peters and Epperson were each under one-year teaching contracts, which, under Kansas law, would automatically continue to the following school year unless written notice of an intention to terminate the contract was furnished by March 15. Kan.Stat. § 72–5411. The reason given by the District for not renewing the teaching contracts of both Peters and Epperson, along with the others, was budgetary cuts, necessitated by a decrease in school enrollments with a corresponding decrease in state aid.

Peters and Epperson were president and president-elect, respectively, of the local branch of the National Education Association, and at about this time there had been some rather heated bargaining negotiations between the local NEA and the school board. Peters and Epperson were of the firm view that the refusal of the school board to renew their teaching contracts was not really caused by budgetary problems, but on the contrary was in retaliation for the exercise by them of their First Amendment right to free speech in connection with their NEA activities. In any event, Peters and Epperson retained counsel, and asked the board for a hearing. The board, on advice of its counsel, refused this request for a hearing, believing that a teacher was not entitled to a hearing upon the refusal to renew a one-year teaching contract because of budgetary problems. We note that these events transpired prior to *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

It was in this general factual setting that District No. 480 brought a declaratory judgment action in a state court of Kansas against Peters and Epperson, seeking a declaration that, under the terms of the teaching contracts and the state law of Kansas, the District did not have to afford them a hearing. Peters and Epperson caused the declaratory judgment action to be removed to the United States District Court for the District of Kansas. 28 U.S.C. § 1441(b).

At the same time the declaratory judgment action was removed to federal court, Peters and Epperson instituted individual proceedings in the United States District Court for the District of Kansas against the members of the school board for District No. 480, both in their official capacity as school board members, and individually. Jurisdiction was based on 28 U.S.C. §§ 1331 and 1343. The claim, in essence, was that Peters and Epperson had been denied both procedural and substantive due process in that, first, under the Fourteenth Amendment they should have been afforded a hearing before their teaching contracts were finally not renewed, and, second, that though budgetary reasons were assigned as the reason for nonrenewal, in reality their contracts were not renewed because of the exercise by them of their First Amendment right to free speech. These three actions, namely, the District's declaratory judgment action, and the individual actions of Peters and Epperson were consolidated for hearing in the trial court. By stipulation the claim

based on abridgment of First Amendment rights was tried first to a jury, such trial taking three weeks. It was agreed that the remaining issues would later be tried to the court, sitting without a jury, on the basis of the record made in the trial of the First Amendment claim.

The jury trial of the First Amendment claim resulted in a verdict for the members of the school board, and judgment to that effect was duly entered. The claim that Peters and Epperson were entitled to a hearing before nonrenewal was later tried to the court, based on the record as made at the jury trial on the First Amendment claim. The trial court held that Peters and Epperson had a sufficient property interest to entitle them to a hearing before any final determination was made not to renew their teaching contracts. However, judgment was entered in favor of the members of the school board sued as individuals, on the ground of a qualified privilege. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) and *Bertot v. School Dist. No. 1, Albany County, Wyo.,* 522 F.2d 1171 (10th Cir. 1975). As concerns the members of the school board sued in their official capacity, the trial court concluded that notwithstanding the fact that Peters and Epperson were not afforded the hearing to which they were entitled, no money judgment for back pay could be entered because of the Eleventh Amendment. The trial court further concluded that under the circumstances, namely, a jury having found that the teaching contracts of both Peters and Epperson were not renewed because of budgetary problems, and not because of the exercise by them of their First Amendment rights, reinstatement was "inappropriate." Accordingly, judgment was entered in favor of the school board members acting in their official capacity.

Peters and Epperson now appeal and urge but two grounds for reversal: (1) The trial court erred in concluding that the Eleventh Amendment precluded the entry of a money judgment; and (2) the trial court erred in concluding that reinstatement was inappropriate.

As indicated, the trial court found that both Peters and Epperson had a sufficient property interest under *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) to entitle them to a pre-termination hearing. The school board has not appealed, and hence it is the law of the case that when the local school board refused to afford them a hearing, Peters and Epperson were denied procedural due process afforded by the Fourteenth Amendment.

■ Though having found that the constitutional rights of both Peters and Epperson had been thus violated, the trial court denied relief to both teachers. As indicated, the trial court concluded that under the circumstances reinstatement some three years after nonrenewal was inappropriate, and that a money judgment for back pay or consequential damages against the local school board members acting in their official capacity was precluded by the Eleventh Amendment. On appeal, counsel for Peters and Epperson argue that since it has been determined that Peters and Epperson were denied procedural process when the school board denied them a hearing before termination, reinstatement was required, and that additionally, they were entitled to pay from the date of their termination in 1972 until the date of their reinstatement, plus all consequential damages. We do not agree with this argument, at least not in its entirety, which, in our view, overlooks the fact that a jury has after a three-week trial found that the terminations were in fact necessitated by budgetary reductions and were not prompted by the exercise by Peters and Epperson of their First Amendment right of free speech. To grant Peters and Epperson all that which they now seek, namely, reinstatement, lost pay, and consequential damages, would afford them all the relief they could have obtained had they prevailed in the First Amendment claim, which they did not, and would in practical effect render the three-week trial a nullity. Such would be utterly unrealistic.

Other courts have also been faced with the problem of what to do when several

years after a teacher's contract is terminated or not renewed, it is determined, upon trial, that the termination or nonrenewal was for good cause, but that nevertheless there was a denial of procedural due process in that the teacher was not afforded a hearing before termination or nonrenewal. *See Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569 (7th Cir. 1975); *Zimmerer v. Spencer*, 485 F.2d 176 (5th Cir. 1973); and *Horton v. Orange County Board of Education*, 464 F.2d 536 (4th Cir. 1972). In each of these three illustrative cases reinstatement was held to be inappropriate. In *Hostrop* the Seventh Circuit pointed out that the "wrong" done the plaintiff school teacher was not the termination, as such, of the teaching contract, for upon trial it had been determined that termination was justified; rather the "wrong" was the deprivation of the teacher's procedural due process right to notice and a hearing. The latter "wrong" was deemed insufficient to justify reinstatement some five years after the teaching contract had been terminated, and in light of the trial court's determination, after trial, that the teacher's termination was for just cause. The trial court in the instant case did not under the circumstances err in holding that reinstatement was inappropriate.

In each of the three cases above cited it was held that the plaintiff teacher, though not entitled to reinstatement, was nonetheless entitled to some form of money judgment for the wrong done him or her in terminating the teaching contract without a pre-termination hearing. However, in none of those cases was the Eleventh Amendment an issue. In *Hostrop*, for example, by footnote at p. 577 the court stated that the Eleventh Amendment did not affect the suit because Illinois had waived any immunity the school board might otherwise have. In *Zimmerer* and *Horton*, the Eleventh Amendment was not mentioned.

In the instant case, however, the Eleventh Amendment is an issue. The trial court clearly indicated that but for the Eleventh Amendment a money judgment in

favor of Peters and Epperson might well be in order, but concluded that under the circumstances the Eleventh Amendment precluded the entry of a money judgment against the local school board members, acting in their official capacity as members of the school board for School District No. 480. In thus holding the trial court in our view committed error. We do not deem the Eleventh Amendment to be applicable to District No. 480.

The Eleventh Amendment reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

██ It is well established that under the Eleventh Amendment a non-consenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651 (1974) and the cases cited therein at page 663, 94 S.Ct. 1347, 39 L.Ed.2d 662. Furthermore, a suit in a federal court against the members of a state board or agency acting in their official capacities is a suit against the board or agency itself, and subject to the immunity afforded by the Eleventh Amendment. *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

██ In determining in a given case whether a board or agency is an arm or alter ego of the state and therefore in reality the state within the meaning of the Eleventh Amendment, the powers, nature, and characteristics of the board or agency must be critically examined under state law. *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir. 1975). Two primary tests for distinguishing alter egos, enjoying the state's Eleventh Amendment immunity, from so-called political subdivisions, such as counties and municipalities, which do not enjoy such immunity are: (1) To what extent does the board, although carrying out a state mission, function with substantial au-

tonomy from the state government and, (2) to what extent is the agency financed independently of the state treasury. *Hutchison v. Lake Oswego School Dist. No. 7,* 519 F.2d 961 (9th Cir. 1975) and *George R. Whitten, Jr., Inc. v. State Univ. Construction Fund,* 493 F.2d 177 (1st Cir. 1974). In this latter connection, it is agreed that if the money judgment sought to be entered against a board or agency will be satisfied out of the state treasury, then the board is immune from suit under the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, this rule has no application to the instant case, as it is agreed, and was so found by the trial court, that any money judgment which might be awarded either Peters or Epperson against the school board members acting in their official capacities would not come from state funds, but from monies raised by special levy within the school district itself. Kan.Stat. § 72–8209.

A very recent case, which the trial court did not have the benefit of, is most helpful in determining whether the members of the school board for District No. 480, acting in their official capacity, are under the Eleventh Amendment immune from suits brought in the federal courts. *See Mt. Healthy City School District Board of Education v. Doyle,* —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There a local school board in Ohio determined not to renew a teaching contract and the teacher involved brought suit in federal court against the local board, alleging a violation of his First and Fourteenth Amendment rights, with jurisdiction being based on 28 U.S.C. § 1331 and 1343. The trial court in *Mt. Healthy* held that any immunity enjoyed by the local school board under the Eleventh Amendment had been waived by Ohio statute. This holding was not disturbed by the Circuit Court on appeal. On certiorari, the Supreme Court, expressing some doubt that there was a waiver, preferred to address itself to the question of whether the local school board had any Eleventh Amendment immunity in the first place. In concluding that the local school board did *not* enjoy

Eleventh Amendment immunity, the Supreme Court spoke as follows:

The bar of the Eleventh Amendment to suit in federal courts extends to states and state officials in appropriate circumstances, *Edelman v. Jordan,* 415 U.S. 651, [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974); *Ford Motor Co. v. Department of Treasury, supra,* but does not extend to counties and similar municipal corporations. See *County of Lincoln v. Luning,* 133 U.S. 529, 530, [10 S.Ct. 363, 33 L.Ed. 766] (1890); *Moor v. County of Alameda,* 411 U.S. 693, 717–721, [93 S.Ct. 1785, 1799–1801, 36 L.Ed.2d 596] (1973). The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends at least in part upon the nature of the entity created by state law. Under Ohio law the "state" does not include "political subdivisions," and "political subdivisions" do include local school districts. Ohio Rev. Code § 2743.01. Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education, Ohio Rev. Code § 3301.07, and receives a significant amount of money from the State. Ohio Rev. Code § 3317. But local school boards have extensive powers to issue bonds, Ohio Rev. Code § 133.27, and to levy taxes within certain restrictions of state law. Ohio Rev. Code §§ 5705.02, 5705.03, 5705.192, 5705.194. On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts.

■ We perceive a considerable similarity between District No. 480 in Seward County, Kansas and the local Ohio school board in *Mt. Healthy.* Local unified school

districts in Kansas can sue and be sued, execute contracts and hold real and personal property, and in general possess the "usual powers of a corporation for public purposes." Kan.Stat. § 72–8201. For budgetary and taxing purposes, a local unified school district in Kansas is considered a municipality. Kan.Stat. § 72–8204a. The State of Kansas, as does the State of Ohio, furnishes substantial state aid to the local school districts, though the latter fix their own budgets and are empowered to levy and collect taxes within the local school district with which to fund their budget. Kan.Stat. §§ 72–7021, 8204a, 79–2925, 2931.

In *Mt. Healthy*, the Supreme Court stated that the local school board was subject to "some guidance" from the Ohio State Board of Education. In the instant case, under Article 6, section 2(a) of the Kansas Constitution, the local unified school districts are subject to the "general supervision" of the State Board of Education. Though this has been held by the Kansas Supreme Court to be a rather broad supervisory power, it is still "supervision," and not "control." *State ex rel. Miller v. Board of Education of Unified School District No. 398*, 212 Kan. 482, 511 P.2d 705 (1973). Any distinction between "some guidance" in *Mt. Healthy* and "general supervision" in the instant case is insufficient in our view to tip the scales. In short, we conclude that "on balance," School District No. 480 in Seward County, Kansas, and its school board members acting in their official capacity, are not the alter ego of the state, but are more like a municipality, for example, and hence do not enjoy Eleventh Amendment immunity.

We do not believe our conclusion that School District No. 480 is not entitled to Eleventh Amendment immunity is in any way at odds with either *Brennan v. University of Kansas*, 451 F.2d 1287 (10th Cir. 1971) or *Harris v. Tooele County School District*, 471 F.2d 218 (10th Cir. 1973). In *Brennan* we held that the University of Kansas and its University Press of Kansas were an arm or alter ego of the state and entitled to Eleventh Amendment immunity. To us there are at once apparent significant

differences between the University of Kansas and School District No. 480. For one, the University does not levy and collect taxes. And under Article 6, section 2(b) of the Kansas Constitution the State Board of Regents has "control," in addition to "supervision," over all institutions of higher learning. We know that a typical state board of regents really runs the state university, whereas the State Board of Education in Kansas merely "supervises" the local school districts, with the latter having a high degree of autonomy.

In *Harris* we held that a local school district in Utah was an alter ego of the State of Utah. However, an influencing factor in that case was the possibility that a money judgment rendered in federal court against the school district might be paid, at least partially, out of state funds. In the instant case, as referred to above, it is agreed, and was so found by the trial court, that any money judgment which might be entered in favor of Peters or Epperson against District No. 480 would be raised by special levy within the district, and would not come from the state.

The judgment is reversed and the case is remanded to the trial court with direction that it determine the damages fairly attributable to the failure of the school board to afford Peters and Epperson their Fourteenth Amendment right to a pre-termination hearing. We recognize the damage question, and the extent of any such recovery, may itself be a troublesome one. This precise matter was discussed at some length in *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, at pp. 578–580 (7th Cir. 1975). Like the Seventh Circuit, we think this problem should be decided by the trial court.

■ To reach a contrary result in the instant case would to us be a bit incongruous, in that we would be holding that there was no relief or remedy whatsoever for an admitted violation of a constitutional right. The right to notice and a hearing before termination or nonrenewal of a teaching contract, assuming the particular individual enjoys such a right, is an important one,

and to hold that such right may be violated without affording the injured party any redress of any kind tends to deprive the right of meaning. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, at p. 40 (3d Cir. 1974), vacated on other grounds, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

Judgment reversed and case remanded for further proceedings consonant with the views herein expressed.