Carol DALEY, et al., Plaintiffs,

v.

REGIONAL TRANSPORTATION
DISTRICT, et al.,
Defendants.

Civ. A. No. 92–M–830.

United States District Court,
D. Colorado.

June 11, 1992.

Doris Besikof, Denver, Colo., for plaintiffs.

Sally Zack Wheeler, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

PRINGLE, United States Magistrate Judge.

Plaintiff Carol Daley (hereinafter "Daley") was employed by the Regional Transportation District (hereinafter "RTD").

She and her husband commenced this action in Denver District Court asserting that the RTD had implemented a policy of harassing injured workers who filed workmen's compensation claims. The verified complaint asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as various pendent state law claims. The defendants are the RTD; Roger Cracraft, Chairman of the RTD board; Chester Colby, the CEO of RTD; Donald Deagle, in-house legal counsel; Ed Swanson, an RTD executive; and Suzanne Karp–Kintzele, an employee of RTD responsible for administering workmen's compensation benefits. Defendants RTD, Cracraft, Swanson, Deagle and Karp–Kintzele removed the case to the United States District Court pursuant to 28 U.S.C. § 1441(b).

Prior to the removal, on April 1, 1992, defendants RTD, Deagle and Swanson filed a Motion for More Definite Statement. On April 24, 1992, plaintiffs filed a Motion to Order Defendants to Answer the Verified Complaint. On May 5, 1992, after the removal of the case to federal court, defendants Cracraft and Karp–Kintzele also filed a Motion for More Definite Statement, which included a request to stay discovery.[1] On May 5, 1992, the Honorable Richard P. Matsch entered an Order referring this case to me for, among other things, discovery management and determination of all non-dispositive motions.

Pursuant to Judge Matsch's Order of Reference, I have reviewed the pending motions for more definite statement and the motion to order defendants to answer the verified complaint. The motions and briefs adequately frame the issues, and oral argument would not materially aid in resolving the questions before me. For the reasons stated hereinafter, I conclude that the motions for a more definite statement should be granted and the motion to compel an answer to the verified complaint should be denied. Ruling on the motion to stay discovery will be deferred until the scheduling conference, currently set for June 18, 1992.

**I. The Facts**

According to the allegations in the Verified Complaint, Daley was employed by RTD as a PBX operator from 1976 to March 1, 1990. Daley sustained on the job injuries to her neck in 1981, and injuries to her back in 1983, 1986, and 1991. She submitted claims for workmen's compensation benefits to RTD, which is self-insured and administers its own benefit payments and medical care for injured workers. Plaintiffs contend that RTD adopted and implemented a policy of harassing injured workers and delaying and/or impeding the payment of workmen's compensation benefits. The Verified Complaint identifies several allegedly unlawful actions taken against Daley by the defendants, including (a) abolishing her job on the PBX switchboard; (b) requiring her to sit with no work to do for extended periods of time; (c) making demands that she return to work as soon as possible; (d) delaying and refusing to pay for psychiatric care and a health club membership; (e) defendant Swanson yelling at Daley because her doctor had recommended surgery; (f) defendants Swanson and Karp–Kintzele discussing Daley's workmen's compensation claim in front of other workers, and defendant Deagle refusing to discuss Daley's harassment claims with her; (g) criticizing Daley for retaining a lawyer; (h) dictating the choices and amounts of medical care Daley would receive; (i) entering an examining room when Daley was disrobed; (j) sending Daley to a pain tolerance evaluation which resulted in an allegation that she was a substance abuser; (k) disclosure of otherwise confidential medical information about Daley to her co-workers; (l) engaging in a practice of late payment, underpayment and nonpayment of benefits; (m) demanding Daley's resignation as part of any settlement of her workmen's compensation claims; and (n) canceling Daley's lifetime bus pass.

The Verified Complaint also purports to identify the various rights which were in-

---

**1.** The motions for more definite statements filed by RTD, Deagle and Swanson were still pending

at the time of the removal to federal court.

fringed by the above-described conduct. The list includes (a) a liberty interest under the Fourteenth Amendment to the United States Constitution to be free from interference with plaintiff's ability to perform her job, and to be free from interference with her reputation as an honest, diligent worker; (b) a property interest in employment guaranteed by the Fourteenth Amendment; (c) the right to privacy, guaranteed by the Fourteenth Amendment; (d) the right to equal protection and to the privileges and immunities of the law, under the Fourteenth Amendment; (e) the right to due process of law under the Fifth and Fourteenth Amendments; and (f) a right under the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., to be free from discrimination on account of her handicap/work related injury.

The defendants' motions for more definite statement and supporting briefs point out that RTD is a political subdivision of the State of Colorado. As a result, contend the defendants, RTD may be entitled to immunity from suit,[2] and the individual defendants may be entitled to qualified immunity. The motions further note that the Verified Complaint lacks specificity regarding the facts necessary to defeat a claim of immunity. While acknowledging that factual support for conclusory pleadings is generally derived from discovery, the defendants contend that the rule is otherwise when issues of immunity are presented.

In response to the motions for more definite statement, plaintiffs observe that the Verified Complaint contains adequate information to allow the defendants to frame a responsive pleading. They further argue that considerations of immunity should not come into play until the defendants have raised the issue either by a motion to dismiss or as an affirmative defense in their answers.

## II. Analysis

■ Government officials who perform discretionary functions are protected by a qualified immunity with respect to those actions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity doctrine is premised upon the recognition that suits against public officials involve a cost to society as a whole. The components of this societal cost include "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* at 814, 102 S.Ct. at 2736. In order to shield society from adverse impact produced by suits against government officials, the United States Supreme Court has recognized that the immunity conferred should include protection against the costs of extended litigation and far-reaching discovery. *Id.* at 817–18, 102 S.Ct. at 2737–38. *See also Sawyer v. County of Creek,* 908 F.2d 663, 665 (10th Cir.1990).

Because of the concern that litigation against public officials can be disruptive to the proper functioning of government, the courts have attempted to streamline the process for determining whether the qualified immunity doctrine applies in a given case. Indeed, the speedy resolution of issues relating to immunity was a primary factor leading the United States Supreme Court to reject the fact intensive "subjective good faith" test in favor of the "objective reasonableness" standard. As stated in *Harlow,* "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." 457 U.S. at 818, 102

---

**2.** The plaintiffs assert that insofar as RTD is attempting to clothe itself with governmental immunity pursuant to C.R.S. § 24–10–101 et seq., its position is without merit. However, there may still be questions as to whether RTD qualifies as a "arm of the state" entitled to immunity under the Eleventh Amendment to the United States Constitution. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118 (10th Cir.1978).

S.Ct. at 2738. This same objective has led the United States Court of Appeals for the Tenth Circuit to disapprove of deferring disposition of immunity issues until trial (*See Workman v. Jordan,* 958 F.2d 332 (10th Cir.1992)), and to strictly limit discovery until motions directed toward immunity are resolved (*See Lewis v. City of Ft. Collins,* 903 F.2d 752 (10th Cir.1990)).

■ In addition to expediting decisions relating to immunity, the courts have also imposed heightened burdens on a plaintiff who brings suit attacking the conduct of public officials in the realm of their discretionary functions. Thus, in any case where the qualified immunity defense may be applicable, the plaintiff's complaint must contain "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988), *quoting with approval Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987). Further, once the defense of qualified immunity is raised by a motion to dismiss pursuant to F.R.Civ.P. 12(b) or by a motion for summary judgment pursuant to F.R.Civ.P. 56, the plaintiff must come forward with facts sufficient to establish that the defendant's conduct violated the law, and that the law was clearly established at the time of the alleged violation. *Powell v. Mikulecky,* 891 F.2d 1454, 1457 (10th Cir.1989); *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d at 646. Finally, where the constitutional violations relied upon require proof of intentional discrimination or impermissible motive, and the defendant makes a prima facie showing of objective reasonableness, the plaintiff must come forward with specific evidence that the official's conduct was improperly motivated. *Lewis v. City of Ft. Collins,* 903 F.2d 752, 758 (10th Cir.1990).

■ In suits where the potential for defenses premised on immunity exist, the above-described policy considerations dictate that the initial pleadings play a more significant role than in other types of litigation. Notice pleading, which is the norm when discovery can be relied upon to flesh out abbreviated averments, has no utility in the context of actions against public officials. This is because the discovery process itself operates to defeat the very protections that the immunity doctrine is intended to afford. *Harlow v. Fitzgerald,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. As a result, in suits against government officials exercising discretionary functions, the plaintiff's complaint, rather than the discovery process, must supply the factual support for the proposition that the defendants violated clearly established law of which a reasonable person would have known. *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d at 646.

■ Because the pleadings take on heightened significance in a case where potential immunity defenses are or may be asserted, so too does the motion for more definite statement.[3] Indeed, Rule 12(e) motions are a useful tool to insure that the plaintiff's initial pleading is specific enough to allow resolution of immunity issues through a motion to dismiss or motion for summary judgment without the necessity for extensive discovery. *See, e.g., Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985).

■ The Verified Complaint in the case at bar fails in several respects to meet the pleading standard applicable to cases where immunity is a potential issue. First, with some exceptions, the complaint does

---

3. Generally, motions for more definite statements pursuant to F.R.Civ.P. 12(e) are looked on with disfavor. As stated in 5A Wright & Miller, Federal Practice & Procedure § 1376, at pp. 585–588:

Since the overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden of unearthing the underlying factual details on the discovery process, courts have been properly desirous of avoiding any possibility that the permissive allowance of Rule 12(e) motions seeking detailed factual averments will shift the burden of fact elicitation from the discovery phase back to the pleadings, with a resulting delay in joinder of issue. Therefore, many cases have denied Rule 12(e) motions on the ground that the information requested was properly the subject of discovery, and some courts have treated Rule 12(e) motions as discovery applications.

not identify with specificity the person or persons involved in each alleged wrongful act. Each defendant has a possible defense premised on immunity. Generalized averments that "defendants" engaged in various wrongful activities do not provide individual defendants with an opportunity to effectuate their rights to an expedited resolution of their immunity claims. In addition, although numerous constitutional and statutorily conferred rights are set out in paragraphs 26(a)–(f) of the Verified Complaint, no attempt is made to link each of the alleged wrongful acts described in paragraphs 18(a)–(*l*) with the applicable right or rights. Again, plaintiff's pleading must contain such linkage if the defendants are to be afforded a meaningful opportunity to raise immunity through a motion to dismiss. Finally, the Verified Complaint contains no factual allegations directed to whether the contours of the rights identified in paragraphs 18(a)–(*l*) were clear at the time of the alleged violation. These omissions are properly the subject of a motion for more definite statement pursuant to F.R.Civ.P. 12(e).

Based upon the foregoing, it is hereby ORDERED:

1. Defendants' motions for more definite statement are GRANTED. Within 15 days of the date of this Order, Plaintiffs shall file a more definite statement which corrects the deficiencies in the verified complaint identified above. Defendants shall file an answer or appropriate motion no later than 10 days after receipt of the more definite statement.

2. Plaintiffs' motion to compel defendants to answer is DENIED for the reasons set forth above.

3. Defendants' motion for stay of discovery will be addressed at the Scheduling Conference currently set for June 18, 1992.