Robert D. LEE, Plaintiff,

v.

Patrick D. McMANUS, Secretary, Kansas Department of Corrections; Gary D. Rayl, Warden, Kansas State Penitentiary at Lansing; and, State of Kansas, Defendants.

Civ. A. No. 82-3128.

United States District Court,
D. Kansas.

July 15, 1982.

Fred Phelps, Jr., Shirley L. Phelps, Phelps-Chartered, Topeka, Kan., Ethel Louise Bjorgaard, Bonner Springs, Kan., for plaintiff.

Joseph Fast, Asst. Atty. Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This is a civil rights action filed on June 17, 1982, brought pursuant to 42 U.S.C. § 1983, § 1988, and 28 U.S.C. § 1343, with jurisdiction also asserted under 28 U.S.C. § 1331. Plaintiff herein, a paraplegic currently incarcerated at the Kansas State Penitentiary, Lansing, Kansas, seeks money damages and injunctive relief on the ground that defendants have "continued to confine him without providing reasonably necessary, adequate, and proper medical care, psychiatric/psychological, and rehabilitative care and treatment; all in violation of the Eighth and Fourteenth Amendments."

This matter is presently before the court upon plaintiff's motion for a temporary restraining order. On June 30, 1982, the court heard evidence upon plaintiff's motion. Plaintiff appeared in person and by his counsel, Fred Phelps, Jr., Shirley L. Phelps and Ethel Louise Bjorgaard. De-

fendants appeared by their attorney, Joseph Fast, Assistant Attorney General, State of Kansas. Both parties were afforded sufficient notice of the hearing so that witness testimony and other evidence was presented and confronted by each side. Given the adequate notice and presentation of substantial evidence, and absent objection of counsel, the court converted this proceeding into a motion and hearing for preliminary injunction. The court heard arguments and took the matter under advisement until July 7, 1982, to allow the parties to submit briefs, counter affidavits or additional evidence. Plaintiff's "post-hearing brief" and defendants' "memorandum in opposition to plaintiff's application for preliminary injunction" with attached exhibits and the Kansas State Penitentiary medical records on plaintiff have since been received and reviewed by the court. Defendants' motion to file their memorandum and brief one day late is hereby granted.

Having heard and considered all the evidence submitted and arguments of counsel, the court finds the issues in favor of plaintiff's application for a preliminary injunction and determines that a preliminary injunction, more specifically set out hereafter, should be entered in this case.

For purposes of the preliminary injunction, the following discussion constitutes the findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

The gravamen of plaintiff's complaint is that defendants are causing him to be subjected to cruel and unusual punishment by denying him necessary medical care in violation of the Eighth Amendment, made applicable to the states by the Fourteenth. Plaintiff seeks preliminary injunctive relief, specifically, to prevent further denial of the medical care prescribed for him by medical specialists who have treated him for his paraplegia.

Plaintiff, Robert D. Lee, was convicted on September 1, 1981, in the District Court of Wyandotte County, Kansas, of voluntary manslaughter and arson. On December 13, 1981, he was confined in a cell with three other prisoners at the Wyandotte County Jail, when a guard appeared and without warning fired a gun through the cell bars striking plaintiff with a bullet in the spine. Plaintiff was taken to the University of Kansas Medical Center [hereinafter Med Center] where surgery was performed upon him and he was treated within the rehabilitation service. As a result of this spinal cord injury, plaintiff is a permanent and total paraplegic from about the waist down. Plaintiff was discharged from the Med Center on January 29, 1982, and is currently an inmate at the Kansas State Penitentiary, Lansing, Kansas. Defendants are the State of Kansas, the Secretary of the Kansas Department of Corrections and the Director of the Lansing penitentiary.

At the hearing on plaintiff's application for a preliminary injunction, the affidavit of Dr. Karl K. Targownik, Medical Director of the Kansas Department of Corrections and Clinical Director of the Kansas Reception and Diagnostic Center, was admitted wherein he states that he is familiar with plaintiff's condition and circumstances as well as the facilities available for plaintiff's care and treatment within the Kansas State Penitentiary, and within the Kansas correctional system generally. Dr. Targownik further states that:

> ... it is his opinion to a reasonable medical certainty: (a) that KSP does not presently have the facilities and staff to provide adequate medical care and treatment to Mr. Lee; (b) that such facilities are not presently available anywhere within the Kansas correctional system; (c) that Mr. Lee is not presently receiving adequate medical care and treatment and, (d) that Mr. Lee will suffer loss thereby.

Dr. Targownik informs the court that the Kansas Neurological Institute in Topeka is equipped to provide plaintiff with adequate medical care and is available to receive plaintiff upon proper notice.

Among the post-hearing materials submitted by defendants is what may be described as Dr. Targownik's counter affidavit to his own affidavit. Dr. Targownik states in this subsequent document that he

did not know when he signed the first affidavit that plaintiff had filed this lawsuit, that his only purpose was to help plaintiff get released on probation or receive better medical care, that he had not reviewed the daily medical records prepared at KSP, examined plaintiff, talked with the treating physicians or visited the prison infirmary in over a year. This counter affidavit is similar to the testimony given by Dr. Jain and Mr. Doweiko at the hearing in that it recants earlier statements that plaintiff could not receive proper medical care at Lansing. It is not clear why the purpose to be served by the affidavits or statements should alter the professional judgments of these state employees as to the availability of medical care. In essence, each of these men is now saying that his previous, unambiguous statement observing a lack of adequate medical care for plaintiff at Lansing should be disregarded for purposes of this lawsuit because he actually had no factual basis or expertise upon which to form the expressed opinion. The court finds that this counter evidence is not specific as to whether plaintiff is receiving adequate medical treatment. The original statements taken together with the recantations indicate at most that these three witnesses either doubt that or do not know whether plaintiff is receiving adequate medical care.

Dr. John V. Redford, Chairman of the Department of Rehabilitation at the Kansas University Medical Center, who was plaintiff's treating physician in the rehabilitation service following surgery, testified at the hearing. Dr. Redford stated his prognosis that plaintiff's legs are totally paralyzed for life. He also specifically described the major medical problems from which plaintiff presently suffers as a result of his paraplegia: neurogenic (no control) bladder, neurogenic bowel, loss of skin sensation, and abnormal reflexes or spasticity of the lower limbs causing stiffening of the joints. Dr. Redford explained that plaintiff had developed a very deep decubitus ulcer (bed sore) all over his back while at the Med Center which worsened at the penitentiary and as a result of which he was returned to the Med Center for specialized treatment. Similar sores have developed on plaintiff's shins as a consequence of his being shackled while at the Med Center. Dr. Redford additionally delineated other complications such as kidney damage, infection, and contracture of joints which might arise if plaintiff is not provided adequate medical attention and care.

To counteract the medical problems already suffered by plaintiff and to prevent further complications, a colleague of Dr. Redford's at the Med Center, Dr. George Varghese, who had also treated plaintiff, prescribed specific care and treatment to be provided following discharge. Instructions as to the provision of this treatment were written in a letter to the Medical Director at the Lansing penitentiary. The letter was admitted as exhibit # 7 at the hearing. The prescribed treatment includes daily range of motion exercises which need not be performed by a physical therapist, but which cannot be done by plaintiff alone; daily irrigation and bi-weekly replacement of catheter; daily cleaning of catheter opening with antibiotic ointment; stool softeners and suppositories administered every other day with assistance in using the commode; daily fluid intake of 3000 cc; daily skin bathing and check for possible breakdown; daily changing of shin bandages and washing of sores with hydrogen peroxide.

Plaintiff testified that he has not received daily range of motion exercises during his confinement at Lansing and that his joints have stiffened. Dr. Redford confirmed stiffening of the joints as well as more spasticity upon his last examination of plaintiff on June 27, 1982. Plaintiff further testified that his catheter has been changed only once since his return to KSP and that the opening is not cleaned each day. Nor is he given the ointment or gauze with which to attend to this task himself. Plaintiff also testified that he has received two suppositories since his return to Lansing, that he has had only two bowel movements in that time; that these occurred in his bed because the prison does not have toilet facilities for paraplegics; and that he has had

to lie in stool and urine for up to four hours before he was cleaned. Plaintiff additionally testified that he is provided only one pitcher of water per day, and that his shin bandages were changed only twice in June. According to plaintiff, the only instruction followed by prison personnel is that his catheter has been irrigated on a daily basis.

Dr. Redford testified that while at the Med Center plaintiff was trained in the use of a wheelchair with collapsible arms which allowed him to transfer himself from a bed of appropriate height into the chair and back. Plaintiff was also provided an electric, circular bed which alleviated the development or aggravation of bed sores. At the prison, plaintiff does not have a specially constructed wheelchair or bed and is thus unable to transfer himself out of bed.

Dr. Redford gave his professional opinion that cleaning around plaintiff's catheter, changing of his shin bandages, and the stretching of his lower limbs performed only on an infrequent basis would amount to inadequate medical treatment. This doctor, the sole specialist in the field of Physical Medicine and Rehabilitation from which evidence was received, testified that plaintiff needs specific medical care from specially trained individuals. He also testified that doctors at the Med Center could train and instruct the prison medical doctor and staff in the proper care of paraplegics.

Two witnesses testified on behalf of defendants as to psychological testing and mental health as well as vocational rehabilitation services available to plaintiff at the penitentiary. Plaintiff presented no evidence to controvert this testimony.

Dr. Thomas S. Harvey, Medical Director at the Kansas State Penitentiary, testified that while he cannot attest that plaintiff has received the best medical care available, or even that care prescribed by doctors at the Med Center, he is of the opinion that plaintiff is receiving reasonably adequate medical care and is currently in good physical health. Dr. Harvey further testified that plaintiff has been encouraged and is capable of performing some of his own daily-care requirements, but was at first uncooperative; that some facilities and personnel are lacking due to the short time plaintiff has been at Lansing, and that a specially designed wheelchair has been ordered, although no mention is made whether a bed of adjustable or appropriate level will also be available. Dr. Harvey could not deny that plaintiff's bandages and catheter have been changed less frequently than instructed in the letter from Dr. Varghese, but stated he disagreed that such frequent replacement was necessary. Dr. Harvey gave his opinion that there are adequate staff and personnel at Lansing to properly care for plaintiff, however; he also candidly declared that he has "very little" training in rehabilitation medicine and that Dr. Redford would surely know more than he if that is his specialty. In general, it appears from this witness' testimony that he has not personally participated in providing the treatment to plaintiff prescribed in the Dr. Varghese letter and that he has no knowledge as to whether or not his staff has actually performed the daily-care requirements other than what he has discerned from infirmary records.

The medical records on plaintiff kept at the prison infirmary indicate that, while plaintiff has received some medication and treatment, he has not been provided all the care recommended by physicians at the Med Center at the frequency prescribed in the letter to Dr. Harvey. These records reveal that plaintiff is not assisted to use a commode, but must relieve his bowel in bed; that exercise is not made a part of his daily regimen; that he is not forced to drink a minimum amount of liquids; that his skin is never checked; that his shin bandages are rarely changed; that he has infrequently received suppositories; and that his catheter was changed only once when it came out and was consequently ordered replaced by Dr. Harvey.

Plaintiff's motion for preliminary injunctive relief is, of course, brought pursuant to Rule 65, Federal Rules of Civil Procedure. The Tenth Circuit Court of Appeals clearly set out the standards which govern requests for preliminary injunctions in *Lundgrin v.*

*Claytor,* 619 F.2d 61, 63 (1980). To obtain a preliminary injunction, the movant must show: (1) the likelihood that he will succeed on the merits; (2) the threat of irreparable harm to him if an injunction is not granted; (3) that the threatened harm to him outweighs whatever damage the proposed injunction may inflict upon defendants; and (4) that the injunction, if issued, would not be adverse to the public interest. *See also* C. Wright & Miller, Federal Practice and Procedure: Civil, § 2948, pp. 430–31 (1973). Wright and Miller indicate that the most significant factor of the four is plaintiff's demonstration of the threat of irreparable injury:

> "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief. . . ."

C. Wright and Miller, supra, at § 2948, pp. 431, 434.

The proposition that the applicant has the burden of proving and must prove in order to succeed, the likelihood of irreparable injury if an injunction is not granted, is well established. *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441, 94 S.Ct. 1113, 1125, 39 L.Ed.2d 435 (1974); *Lundgrin v. Claytor, supra; Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975); *Armstrong v. Maple Leaf Apartments, Ltd.,* 508 F.2d 518, 524 (10th Cir. 1974); *Automated Marketing Systems, Inc. v. Martin,* 467 F.2d 1181, 1183 (10th Cir. 1972); *Crowther v. Seaborg,* 415 F.2d 437, 439 (10th Cir. 1969).

Having discussed the evidence in some detail, we proceed to evaluate the four prerequisites to a preliminary injunction as they apply to the case at hand.

▮ (1) Likelihood of success on the merits. The court finds that plaintiff has established the likelihood of success on the merits. The standard in a cruel and un-usual punishment case based upon a claim of denial of medical treatment is whether plaintiff has shown deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Twyman v. Crisp,* 584 F.2d 352 (10th Cir. 1978). Thus, in order to obtain a permanent injunction, plaintiff must establish through expert medical testimony at trial that he has serious medical needs and that defendants or their agents have been deliberately indifferent to those needs. That plaintiff alone disagrees with the prison medical staff as to his needs or the appropriate treatment is insufficient to establish an Eighth Amendment violation. *McCracken v. Jones,* 562 F.2d 22 (10th Cir. 1978), *cert. denied* 435 U.S. 917, 98 S.Ct. 1474, 55 L.Ed.2d 509 (1978); *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir. 1968). Moreover, if medical personnel at the prison have acted negligently or inadvertently, rather than deliberately, in not providing medical treatment which is shown to be necessary, plaintiff will have stated a claim for malpractice not redressible under the civil rights act. *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976); *Layne v. Vinzant,* 657 F.2d 468 (1st Cir. 1981).

▮ Plaintiff's evidence produced thus far suggests that the disagreement over medical treatment is not merely plaintiff's, but is between the treating physicians at the Med Center and the medical director at Lansing. Dr. Redford's testimony indicated more specific attention to plaintiff's particular condition and an expertise as to the necessary treatment. Plaintiff's case is dissimilar to any denial of medical treatment cases held to be frivolous in that he has medical evidence supporting his difference of opinion. Certain treatment was prescribed for plaintiff. Deliberate indifference is shown when prison officials have prevented an inmate from receiving recommended treatment. *Ramos v. Lamm,* 639 F.2d 559 (10th Cir. 1980), *cert. denied* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

Plaintiff's case also differs from the facially frivolous case in that negligent or

inadvertent failure to provide medical care is not alleged.

As part of our discussion on plaintiff's likelihood of success on the merits, the court wishes to impress upon defendants its distress, not only at the origin of plaintiff's injury and his current circumstances, but also at the apparently passive attitude of defendants and their employees or agents who have permitted such circumstances to persist in spite of their particular responsibility, authority and expertise to determine plaintiff's actual medical needs and to arrange accommodating housing. At this juncture, we are not provided a clue as to why defendants or their agents, in light of their apparent disagreement with the recommendations of Drs. Redford and Varghese, have not carefully re-evaluated plaintiff's treatment needs rather than complacently choosing to provide to plaintiff only the readily available medical care until some court orders alternative action. This court has expertise in neither medicine nor the available housing for state prisoners. While it may well be that plaintiff presents a unique problem to the state correctional system, it is defendants' failure to undertake an administrative investigation of the problem, make specific findings and take affirmative action based on such findings which leaves a decision best made by the responsible experts to this court. Fortunately for all concerned, plaintiff has presented substantial, specific medical evidence which authorizes this court to mandate action. In sum, our evaluation of the evidence produced thus far leads us to conclude that plaintiff is likely to prove that a permanent injunction should be issued by this court.

■ (2) *Threat of irreparable harm.* The testimony of plaintiff and his witnesses establish that unless plaintiff receives immediate and continuous medical care of the type prescribed by Drs. Redford and Varghese, he will suffer unnecessary discomfort and anxiety as well as possible pain and complications potentially of a life-threatening nature. Moreover, the process of plaintiff being trained to care for himself and otherwise adjust to his severe handicap is being coldly and apparently needlessly impeded. Plaintiff's allegations of imminent physical harm are supported by competent medical testimony. Without question, such physical pain or injury constitutes the type of irreparable harm upon the threat of which preliminary injunctive relief may be predicated. Furthermore, while plaintiff may eventually receive compensatory damages as a result of physical injury, the injury and any accompanying pain are not repaired by such an award. Thus, plaintiff in this case may not be made whole by a monetary award following trial.

■ In addition, the denial of a fundamental constitutional right, such as the Eighth Amendment right to be free of cruel and unusual punishment, has been held to be *per se* irreparable harm. *Stewart v. Rhodes*, 473 F.Supp. 1185 (S.D.Ohio 1979); *see also Johnson v. Bergland*, 586 F.2d 993 (4th Cir. 1978). We conclude that plaintiff has sustained his burden of proving that irreparable harm to him may occur before a trial on the merits can be had.

■ (3) *Balance of the harms.* Defendants presented no evidence of possible harm to them should an injunction be granted. In fact, two of three witnesses for defendants had previously attempted to persuade the state sentencing judge to release plaintiff from Lansing so that he might receive better medical, psychiatric and rehabilitative care. The court cannot perceive that the ordering of proper medical care for plaintiff will cause substantial injury to defendants. No evidence is presented that the defendant Secretary of Corrections is unauthorized to allow a prisoner to leave the penitentiary in order to obtain health services otherwise unavailable or to contract for such services. *See K.S.A.* 75–5267. Certainly, the threat of irreparable physical harm to plaintiff is not outweighed by the risk of financial burden or administrative inconvenience to defendants. Accordingly, the court finds that the balance of hardships tips decidedly in favor of plaintiff.

(4) *Public Interest.* Finally, we find that the public interest will not be disserved by the granting of preliminary injunctive relief in this case.

All factors having been considered, the court finds that plaintiff's application for a preliminary injunction should be granted.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's application for a preliminary injunction be granted in the following particulars:

1. Defendant Patrick D. McManus, his agents, employees and attorneys, and those persons in active concert or participation with defendant who receive actual notice of this order by personal service or otherwise, be and hereby are restrained from failing or refusing to provide plaintiff with the precise medical treatment recommended for him by physicians at the Med Center as set forth in exhibit # 7, the letter from Dr. Varghese to Dr. Harvey, as well as equipment and facilities which will allow plaintiff to transfer himself in and out of bed and use a bathroom. The court does not designate where, how or by whom the specified medical treatment is to be administered. Those decisions are left to the reasoned discretion of defendants and their employees. The court simply orders that the prescribed medical treatment be immediately provided.

2. The medical treatment which must be provided includes:

(a) Change the dressing on the shin area daily. Each time wash the sore with one-half strength hydrogen peroxide and then wash it out with normal saline and then put the plain dressing.

(b) Force fluids. He should drink approximately at least 3000 cc. of fluid every day. Watch the catheter for any residue or any gravel-like substance. He also needs bladder irrigation with 50 cc. of irrigant fluid once daily.

(c) The suprapubic catheter needs to be changed once in two weeks. He has a tract formed and 18 French or 20 French can be inserted without any problem.

(d) The catheter needs to be cleaned every day, especially near the stoma. It is better to use Neosporin ointment around the stoma.

(e) Continue to use Colace 100 mg. three times a day and alternate days of suppository. It would be advisable to provide him with some high roughage diet. Continue Septra one tablet twice a day; Baclofen 20 mg. four times a day; Elavil 100 mg. qhs.; Stress caps qd.

(f) Check the skin every day for any possible break down.

(g) Daily range of motion exercises.

(h) Provide a wheel chair and bed designed to permit plaintiff to transfer himself in and out of bed.

(i) Provide suitable bathroom facilities and assistance in the use thereof.

(j) Supply or arrange for any additional medical treatment hereafter found by medical personnel to be necessary for plaintiff.

IT IS FURTHER ORDERED that defendants provide actual notice of this Memorandum and Order to their agents, employees and attorneys; and that they submit a report to the court on the medical treatment being provided to plaintiff within forty-five (45) days of the date this order is filed.

IT IS FURTHER ORDERED that plaintiff need not provide security prior to the issuance of this preliminary injunction.

The Clerk is directed to transmit copies of this Memorandum and Order to the parties and their counsel.

IT IS SO ORDERED.