Robert D. LEE, Plaintiff,

v.

Patrick D. McMANUS, Formerly Secretary, Kansas Department of Corrections; et al., Defendants.

No. 82–3128.

United States District Court, D. Kansas.

June 28, 1984.

Fred W. Phelps, Jr., Shirley Phelps-Roper, Phelps-Chartered, Topeka, Kan., for plaintiff.

Kenneth R. Smith, Asst. Kansas Atty. Gen., Topeka, Kan., Ethel Louise Bjorgaard, Lou Bjorgaard, Bonner Springs, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This is a civil rights case filed pursuant to 42 U.S.C. § 1983 by an inmate in the Kansas State Penitentiary, Lansing, Kansas.

This court conducted evidentiary hearings in connection with this case on June 30 and September 17, 1982. These hearings dealt with plaintiff's motion for preliminary injunction. The court also has had the benefit of a *Martinez Report* [see *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) ], which, at the direction of this court, was filed on behalf of defendants.

This case is now before the court on defendants' motion for summary judgment.

Based on the entire file now before this court and the record before the court made in the evidentiary hearings, the court finds that defendants' motion for summary judgment should be granted.

Defendants allege the facts of this case to be as follows, and these allegations are not substantially controverted by plaintiff.

1. Plaintiff is a paraplegic prisoner serving a sentence of not less than five (5) nor more than twenty (20) years in the Kansas State Penitentiary [hereinafter KSP] at Lansing, Kansas.

2. Because of his condition, plaintiff has been assigned to the institution infirmary within the KSP.

3. Plaintiff was admitted to the University of Kansas Medical Center [hereinafter KUMC] on December 12, 1981, immediately after receiving the gunshot wound that resulted in his paraplegia.

4. On December 28, 1981, plaintiff was transferred from the Intensive Care Unit at KUMC to the Rehabilitation Unit, where he participated and was instructed in a rehabilitation program.

5. On February 8, 1982, plaintiff was discharged from KUMC and transferred to the KSP infirmary.

6. Plaintiff suffered from a large sacral decubitus ulcer prior to his initial admission to the KSP infirmary.

7. On March 23, 1982, plaintiff was readmitted to the KUMC for treatment of the sacral decubitus ulcer.

8. On June 2, 1982, plaintiff was returned to the KSP infirmary, where he has been assigned up to the present time.

9. Plaintiff's original complaint was filed on June 17, 1982. Plaintiff's first amended complaint was filed on August 19, 1982, designating as a defendant in the present matter Thomas S. Harvey, M.D., institution physician at KSP.

10. On June 30, 1982, the court conducted an evidentiary hearing to consider plaintiff's motion for a preliminary injunction to determine whether the defendants had been supplying necessary medical care. The court held in an order entered and filed on July 15, 1982, that the application for preliminary injunction should be granted. See *Lee v. McManus*, 543 F.Supp. 386 (D.Kan.1982).

11. The court, in its order entered July 15, 1982, directed the defendants to provide plaintiff with "the precise medical treat-

ment recommended for [plaintiff] by physicians at the Med Center." Defendants were also directed to supply the court with a written report describing the medical treatment provided to plaintiff.

12. A second evidentiary hearing was conducted on September 17, 1982, by this court.

13. The court, in an order entered September 22, 1982, recognized that the defendants had made a substantial effort to comply with the terms of the preliminary injunction issued July 15, 1982. The court found that plaintiff was being provided with medical treatment that would prevent irreparable injury until the final disposition of the above-captioned matter. Correlatively, the court also directed the defendants to completely and fully comply with the court's preliminary injunction issued on July 15, 1982; that the defendants provide plaintiff with a sliding board or insure that plaintiff is thoroughly trained in the use of the trapeze; that the defendants supply plaintiff with adequate bathroom facilities; that defendants continue to provide plaintiff with the opportunity to receive physical examinations at KUMC; and that defendants supply any and all medical treatment subsequently prescribed by the medical specialists at KUMC.

14. Defendant Rayl has instructed the infirmary administrator, Marilyn Belshe, to acquire any equipment that is required to insure plaintiff's medical needs are satisfied.

15. Defendants have supplied for plaintiff's use a wheelchair with collapsible arms. A trapeze that had been rented to enhance plaintiff's mobility has been replaced by a sliding board. A commercially manufactured shower chair has been obtained to permit plaintiff to satisfy his personal hygiene requirements. Defendants have acquired and provided for plaintiff's use a set of barbells for plaintiff's physical therapy program. Defendants have modified a restroom facility within the infirmary to provide plaintiff with unrestricted access.

16. Defendants have provided training opportunities for plaintiff to learn to successfully use the special equipment he requires. In addition to plaintiff's initial training at the KUMC Rehabilitation Unit, plaintiff has received specialized therapy instruction from KSP infirmary staff members and from physical therapists employed in the Rehabilitation Unit of St. John's Hospital in Leavenworth, Kansas.

17. The KSP infirmary staff has attempted to initiate a bowel training program for plaintiff's benefit. Plaintiff has elected to utilize suppositories to control his bowel movements.

18. The KSP infirmary staff made an appointment with Dr. John V. Redford, Chairman of the Department of Rehabilitation at KUMC, in order for plaintiff to be evaluated for bracing. Plaintiff declined to keep the appointment, informing the infirmary staff that he did not wish to receive braces.

19. Plaintiff has exhibited increased independence, which is manifested by plaintiff's assumption of the responsibility of cleaning and changing his catheter with supervision.

20. KSP institutional mental health personnel have informed plaintiff of the availability of mental health counseling. Plaintiff has consistently refused to take advantage of these services.

21. Plaintiff's complaint charges the defendants with confining plaintiff "without providing reasonably necessary, adequate, and proper medical care, psychiatric/psychological, and rehabilitative care and treatment; all in violation of the Eighth and Fourteenth Amendments."

22. Plaintiff invoked the jurisdiction of the court pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343.

23. Plaintiff brought this action to obtain temporary and permanent injunctive relief; actual damages in excess of One Hundred Thousand Dollars ($100,000); punitive damages in excess of One Hundred Thousand Dollars ($100,000); all costs as provided by 42 U.S.C. § 1988; and such

additional relief as the court deems appropriate.

As previously stated, plaintiff does not disagree substantially with the statement of facts as outlined by defendants, but does allege additional facts as follows.

1. Defendant McManus, as Secretary of the Department of Corrections, promulgated certain wrongful policies which denied plaintiff his rights. (See *Psycho-Social Evaluation* by Drs. Showalter, Doweika and Jain on March 4, 1982; *Psychiatric Consultation Report* by Dr. Targownik on May 28, 1982.)

2. Defendant McManus "... and his delegates have the sole discretion to designate inmate housing and to transfer state inmates, as well as the authority to contract for specialized housing or treatment. K.S.A. 75–5205, –5206 and –5210(c). Thus, it appears that the housing of plaintiff at Lansing is a discretionary decision attributable to the Secretary of Corrections." *Lee v. McManus,* 543 F.Supp. 386 (D.Kan., *unpublished,* 9/22/82) (J. Saffels), p. 5.

3. Plaintiff's sacral decubitus ulcer worsened as a result of the treatment he received at the KSP. (Lee Deposition, p. 3, lines 20–22.)

4. Plaintiff received inadequate nutrition to meet his special needs when he was at the KSP. (Lee Deposition, p. 3, line 25; p. 4, line 1.)

5. Plaintiff's overall physical condition has deteriorated from the lack of physical therapy at KSP. (Lee Deposition, p. 4, lines 2–25; p. 5, lines 1–4.)

6. Plaintiff was not supplied with a wheelchair with removable arms, which is a necessity for his condition. (Lee Deposition, p. 6, lines 2–11.)

7. Between June 2, 1982, and June 30, 1982, plaintiff's bandages for the skin on his legs have been changed twice. The second changing was at the insistence of plaintiff's counsel. (Lee Deposition, p. 7, lines 10–25; p. 8, lines 1–18.)

8. Plaintiff has been unable to bathe himself because of inadequate facilities. (Lee Deposition, p. 8, lines 19–25; p. 9, lines 1–12.)

9. Plaintiff has been submitted to an inadequate supply of drinking water, and this is compounded by the hot temperature in his cell. (Lee Deposition, p. 10, lines 12–23.)

10. The penitentiary's buzzing system, a necessity for plaintiff, has been out of order, causing plaintiff to lack proper medical treatment and sanitation. (Lee Deposition, p. 10, lines 24–25; p. 11, lines 1–20.)

11. Between June 2, 1982, and June 30, 1982, plaintiff only had two (2) bowel movements because defendants only twice gave him the needed suppositories. Because of inadequate facilities at the KSP, plaintiff must rely on suppositories for bowel movements. (Lee Deposition, p. 12, lines 2–17.)

12. Plaintiff has been forced to sit in his own excrement for hours and to use an unsterile catheter. (Lee Deposition, p. 12, lines 18–25; p. 13, lines 1–25; p. 14; p. 15, lines 1–6; p. 18, lines 9–23.)

13. Plaintiff has not been given clothing other than hospital gowns. (Lee Deposition, p. 16, lines 18–24.)

14. Plaintiff has been kept isolated and away from social contact. (Lee Deposition, p. 6, lines 12–25; p. 7, lines 1–2; p. 16, line 25; p. 17, lines 1–2.)

The foregoing facts as alleged by plaintiff are conclusory in many instances; consequently, they do not add as much to framing the issues as the court would like. However, for the purpose of determining this case, the court will regard as true all alleged facts by all parties.

This case must be determined at this juncture on defendants' motion for summary judgment, and the court finds there are legal defenses available to these defendants.

■ The court finds that the defendant State of Kansas is a sovereign state and is, therefore, absolutely immune from liability herein under the provisions of the Eleventh Amendment to the United States Constitution.

The act for the admission of the state of Kansas into the Union provides, in part:

That the state of Kansas shall be, and is hereby declared to be, one of the United States of America, and admitted into the union on an equal footing with the original states in all respects whatever.... (Act Jan. 29, 1861, ch. 20, § 1, 12 Stat. 126.)

The Eleventh Amendment was ratified in 1798 in response to the case of *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), and that amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

(U.S. Constitution, Amend. XI.)

■ The scope of the plain language of the amendment has been widened through judicial interpretation to preclude suits against a state by her own citizens [*Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118 (10th Cir.1978)] and by foreign governments [*Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934)]. The Eleventh Amendment serves as a jurisdictional bar to suit in federal district courts.

■ The law in this area is absolutely clear and may be simply stated as follows: in a United States federal district court a state is absolutely immune in law or in equity for damages or any other relief, either prospective or retrospective in nature, in any action brought by any citizen. See *Edelman v. Jordan, supra; Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Unified School Dist. No. 480 v. Epperson, supra.*

This legal principle as applied by the United States District Court for the District of Kansas is equally as clear. This district has long held that civil rights suits against the state of Kansas or one of its agencies are absolutely barred by the Eleventh Amendment. Dismissal of the state has been granted in every action in which immunity was raised as a defense to the action. See, *e.g., Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.1971); *Unified School Dist. No. 480 v. Epperson, supra;* and the following unpublished cases, *Willner and Hinman v. University of Kansas,* No. 79–4069 (D.Kan., 5/01/84); *Mitchell v. Emporia State University,* No. 78–4189 (D.Kan., 11/—/81; *Valdez v. Kansas Dept. of Social and Rehabilitation Serv.,* No. 76–24–C5 (D.Kan. 4/23/80); *Dobrec v. Robinson,* No. 79–1617 (D.Kan., 7/28/82); *Noel v. Blues,* No. 82–2184 (D.Kan., 10/04/82); *Holt v. Wichita State University,* No. 82–1172 (D.Kan., 9/07/82); *Chapman v. Board of Education of Topeka U.S.D. No. 501,* No. 79–1473 (D.Kan., 12/04/79; *Emmanuelli v. State,* No. 80–4002 (D.Kan., 6/10/81); *Earley v. Kansas,* No. 79–4020 (D.Kan., 7/07/81); *Butler v. Ludwick,* No. 80–4151 (D.Kan., 8/06/81); *Vakas v. State Board of Healing Arts,* No. 82–1589 (D.Kan., 8/25/82).

■ There are only two known exceptions to this absolute immunity granted by the Eleventh Amendment. The most significant court-created exception to the Eleventh Amendment prohibition is contained in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). There, the United States Supreme Court held that suits seeking declaratory or injunctive relief against *state officials* are not barred. The exception is justified by the distinction between suits directly against the sovereign states and suits against state officials who, if engaging in unconstitutional conduct, lose their official representative character and can be held accountable for their individual conduct. *Id.* at 159–60, 28 S.Ct. at 453–54. Thus, this concept is not really an exception to the Eleventh Amendment, but only al-

lows suits against state officials. Because the retrospective award of damages by a federal court against a state, payable from the state treasury, is clearly prohibited by the Eleventh Amendment [*Edelman v. Jordan, supra* ], only prospective equitable relief is available even when state officials are named as defendants [*Quern v. Jordan, supra* ], and that relief is against the state official, *not* the state itself, which remains immune [*Alabama v. Pugh, supra; Hutto v. Finney, supra* ]. See, generally, *Cory v. White, supra; Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981); *Spicer v. Hilton,* 618 F.2d 232 (3rd Cir.1980); *Dobrec v. Robinson,* No. 79–1617 (D.Kan., *unpublished,* 7/28/82); *NAACP v. State of California,* 511 F.Supp. 1244 (E.D.Cal.1981).

█ The other significant exception is when suit against a state is either expressly allowed by United States congressional legislation, predicated on the Fourteenth Amendment to the United States Constitution [*Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), wherein it was held that Congress had expressly abrogated the states' Eleventh Amendment immunity by passage of the 1972 Amendment to the Civil Rights Act of 1964 (Title VII) ], or when a state has waived its immunity.

The United States Congress has never authorized suit against the states pursuant to 42 U.S.C. § 1981, *et seq.* See statutes and *Quern v. Jordan, supra; Dobrec v. Robinson, supra; Chapman v. Bd. of Education of Topeka, U.S.D. No. 501, supra.* The Fourteenth Amendment does not grant a separate cause of action. See *Valdez v. Kansas Dept. of Social & Rehabilitation Serv., supra.* The Eleventh Amendment would still bar such action in a federal district court.

The State of Kansas has never waived its Eleventh Amendment immunity. See *Holt v. Wichita State University, supra; Noel v. Blues, supra.*

█ Actions commenced pursuant to 42 U.S.C. § 1983 cannot be brought against the State of Kansas or any state agencies since the state is not a person within the meaning of the Eleventh Amendment to the United States Constitution. The claims asserted by plaintiff against the State of Kansas must fail. Therefore, the court finds that the State of Kansas should be dismissed as a defendant.

Plaintiff has spent considerable effort in his brief with argument against immunity of the State of Kansas as to liability in this case. The court has examined this language and finds that the precedents plaintiff cited are in the substantial minority in this state, circuit and nation, and, in fact, in the case of some points argued a wrong interpretation of what the decision intended. There can be no doubt that the immunity defense is available to the State of Kansas, and the court so finds.

The court further finds that plaintiff has failed to allege, nor is there proof before the court, that defendant McManus personally participated in any activity that resulted in the violation of plaintiff's constitutional rights.

█ Defendant McManus is not alleged to have personally participated in any action which resulted in the denial of plaintiff's guarantees of due process and equal protection of law or the infliction of cruel and unusual punishment upon plaintiff. Plaintiff has not alleged that defendant McManus personally participated in any conspiracy to deny plaintiff's constitutionally-guaranteed protections.

In addition, defendant McManus cannot be held liable for the actions or inactions of his subordinates within the Kansas Department of Corrections unless there is a clear showing that the subordinates acted pursuant to his instructions or pursuant to a policy promulgated or enforced by defendant McManus.

█ The doctrine of *respondeat superior* does not apply to civil actions brought under 42 U.S.C. § 1983. See *Goode v. Rizzo,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658,

664, n. 7, 98 S.Ct. 2018, 2022, n. 7, 56 L.Ed.2d 611 (1978); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Lessman v. McCormick,* 591 F.2d 605, 612 (10th Cir.1979); *Thompson v. Bass,* 616 F.2d 1259, 1268 (5th Cir.1980); *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979); *Melton v. Shivers,* 496 F.Supp. 781, 782 (M.D.Ala.1980); *Rucker v. Martin,* 505 F.Supp. 20, 23 (W.D.Okla.1980); and *Draeger v. Grand Central, Inc.,* 504 F.2d 142 (10th Cir.1974).

The United States Court of Appeals for the Tenth Circuit recognized this concept in *Kite v. Kelley,* 546 F.2d 334, 337 (10th Cir.1976):

The "affirmative link" requirement of Rizzo means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made. See *Delaney v. Dias,* D.Mass., 415 F.Supp. 1351, 1354–1355.

See also *Jamison v. McCurrie,* 565 F.2d 483, 485 (7th Cir.1977); and *McDonald v. Illinois,* 557 F.2d 596, 604 (7th Cir.), *cert. denied* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); and 51 A.L.R.Fed. 285.

Plaintiff has made no showing that defendant McManus was responsible in any way for the acts allegedly perpetrated upon plaintiff. Plaintiff has not alleged that defendant McManus has personally participated in any conspiracy to deny plaintiff's constitutionally-guaranteed protections.

A state official will not be held liable in a civil rights action filed pursuant to 42 U.S.C. § 1983 unless he or she directly and personally participates in the conduct said to deprive plaintiff of his constitutional rights. In *Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir.1976), that court stated, in pertinent part:

... Personal participation is an essential allegation in a § 1983 claim. *Battle v. Lawson,* 352 F.Supp. 156 (W.D.Okl.1972); *Campbell v. Anderson,* 335 F.Supp. 483 (D.Del.1971); *Christian v. Anderson,* (unpublished, 10th Cir.1974); Case No.

74–1213; *Ellerman v. McCracken* (unpublished, 10th Cir.1974) Case No. 74–1258 ....

See also *Kite v. Kelley, supra; Olquin v. Hendren,* No. 79–1255 (10th Cir., *unpublished,* 1980); *Rucker v. Martin, supra; Lessman v. McCormick, supra.*

In *Mingo v. Patterson,* 455 F.Supp. 1358, 1360 (D.Colo.1978), the court held, in pertinent part:

This circuit has consistently recognized that "personal participation is an essential allegation in a § 1983 claim." ... This requirement was recently reaffirmed by the United States Supreme Court in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held "that a municipality cannot be held liable *solely* because it employs a tortfeasor...." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). [Citations omitted.]

Plaintiff has attempted to make the "affirmative link" [*Rizzo, supra* ] by alleging "defendant McManus, in his official capacity as Secretary of the Kansas Department of Corrections, promulgated wrongful policy causing deprivation of plaintiff's protected rights." This conclusory statement cannot bridge the gap to keep defendant McManus in this lawsuit, and the court so finds.

The court finds that defendants Rayl and Harvey are entitled to a qualified immunity, and, consequently, are immune from monetary damages and other relief. Upon examination of the complaint, answer and the "Martinez Report" previously submitted to this court, and the evidence presented in the two evidentiary hearings, it is apparent that defendants Rayl and Harvey genuinely perceived that all actions in which they were involved regarding plaintiff were conducted in good faith and without malice in essential compliance with pertinent state statutes, administrative regulations, institution policy guidelines or guarantees of the United States and Kansas Constitutions. The court finds defend-

ants Rayl and Harvey should be able to rely upon their qualified official immunity barring money damages in suits filed pursuant to 42 U.S.C. § 1983.

The standards governing a successful assertion of good faith immunity are discussed in *Forsyth v. Kleindienst*, 551 F.Supp. 1247, 1259 (E.D.Pa.1982), wherein that court stated:

To be immune, the official must have (1) reasonably believed that his actions were not against the law and not have had any reason to know that his actions would violate the law; and (2) not have taken the action with malicious intention to deprive the plaintiff of a federal right. *Wood v. Strickland*, 420 U.S. 308 [95 S.Ct. 992, 43 L.Ed.2d 214], ... *reh. denied*, 421 U.S. 921 [95 S.Ct. 1589, 43 L.Ed.2d 790], ... (1975); *Procunier v. Navarette*, 434 U.S. 555 [98 S.Ct. 855, 55 L.Ed.2d 24], ... (1978).

In other words, defendants would not be eligible for the qualified good faith immunity unless they can demonstrate the existence of reasonable grounds for their belief that under the circumstances existing at the time of plaintiff's incarceration in the KSP infirmary the day-to-day decisions to provide medical care to the plaintiff were made in good faith. See *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court finds that defendants Rayl and Harvey acted sincerely and with a belief that their actions were not violative of the applicable law.

The United States Supreme Court considered the concept of qualified good faith immunity as applied to government officials performing discretionary functions in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That court held, in part:

[O]ur decisions consistently have held that Government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interfer-

ence with their duties and from potentially disabling threats of liability.

\*     \*     \*     \*     \*     \*

Decisions of this court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights."... The subjective component refers to "permissible intentions." *Ibid.* Characteristically the court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both the objective and subjective elements, we have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury ...." (Citations and footnotes omitted, emphasis in original.)

*Id.* 457 U.S. at 806, 815, 102 S.Ct. at 2732, 2737.

That court also provided:

... [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... (Citations and footnotes omitted.)

*Id.* 457 U.S. at 817, 102 S.Ct. at 2738.

The actions of defendants Rayl and Harvey in connection with plaintiff's confinement within the KSP were lawful and they did not act with improper or malicious intent; thus, both prongs of the objective-subjective test discussed by the court in

*Harlow* are satisfied, and the court so finds.

Plaintiff continues to set out conclusory statements in his brief to combat the overwhelming arguments of defendants such as:

> In the present case, defendants Rayl and Harvey unlawfully discriminated against plaintiff in bad faith. Additionally, if defendants had acted in good faith, such belief that their conduct was lawful was unreasonable under the circumstances. Finally, defendants violated clearly established rights of the plaintiff which any reasonable person would have known. Therefore, defendants Rayl and Harvey are not entitled to the defense of qualified immunity, and, thus, are liable under 42 U.S.C. Section 1983....

See Plaintiff's Response to Motion for Summary Judgment, p. 20.

Plaintiff then cites primarily *Harlow v. Fitzgerald, supra,* and *Miller v. City of Mission, Kansas,* 705 F.2d 368 (10th Cir. 1983), as legal authority for his position. The court finds neither of these cases actually are helpful to plaintiff's alleged position.

■ In addition to the foregoing, defendant Harvey, the prison physician, has another valid defense. All during the periods alleged herein as times that plaintiff was wronged by defendant Harvey, plaintiff was receiving medical attention from defendant Harvey. This medical attention did not receive the blessings of plaintiff, as he felt other medical attention should have been given him. It is well established that while the judgment of a doctor which results in the delay or deprivation of medical treatment may give rise to an action in tort for malpractice or negligence, it does not amount to a federal constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh. denied* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *Smart v. Villar,* 547 F.2d 112 (10th Cir.1976). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle v. Gamble, supra; Parrilla v. Cuyler,* 447 F.Supp. 363 (E.D.Pa.1978).

Plaintiff's factual allegations, even if taken as true and liberally construed, do not state a claim of cruel and unusual punishment. His remedy, if any, is a suit for malpractice in state court.

The responsible parties for the serious injuries received by plaintiff have never been judicially determined. However, it is known that the defendants named in this lawsuit are not among those who are responsible since his injuries were received prior to his being committed as an inmate at the KSP. The seriousness of plaintiff's injuries and his disability are beyond description. However, there is no legal way to lay this responsibility on these defendants in a civil rights action, and the court so finds.

This court is well aware of the temporary relief it has granted to plaintiff when called upon to do so on the issue of the granting of the temporary injunction. The decisions made under the circumstances then existing were legally correct. The action now being taken by this court is not inconsistent with the action then taken since the issues before the court now present the legal defenses available to the defendants when these issues were not of a posture to decide when the earlier decisions were handed down by this court.

Based on the foregoing, the court finds that defendants' motion for summary judgment should be granted.

IT IS BY THE COURT SO ORDERED.