**Margaret L. KERR, d/b/a Kerr Kennels, Plaintiff,**

v.

**A.T. KIMMELL, Livestock Commissioner of the State of Kansas, Animal Health Department, Defendants.**

**Civ. A. No. 89–4056–S.**

United States District Court, D. Kansas.

June 13, 1990.

Kenneth M. Carpenter, Carpenter, Chtd., Topeka, Kan., for plaintiff.

Robert T. Stephan, Atty Gen., John Campbell, Asst. Atty Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. In this action, filed March 21, 1989, plaintiff alleges that the Kansas Animal Dealers Act, K.S.A. 47–1701, *et seq.* (Supp.1989), violates the Commerce and Supremacy Clauses of the United States Constitution, the Fourteenth Amendment guarantee of equal protection under the law, and the Fourth Amendment prohibition on unreasonable searches and seizures. Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, as well as 28 U.S.C. §§ 2201 and 2202.

For purposes of defendants' motion, the court finds the following facts to be uncontested. Plaintiff, Margaret L. Kerr, is the owner-operator of Kerr Kennels, located near Silver Lake, Kansas. Plaintiff is in the business of breeding and selling dogs. Defendant, Dr. A.T. Kimmell, is the Livestock Commissioner of the State of Kansas charged with responsibility for implementing and administrating the Kansas Animal Dealers Act, K.S.A. 47–1701, *et seq.* (Supp. 1989). Dr. D.A. Hogan, who has resigned this position, was the companion animal veterinarian of the Kansas Animal Health Department at the time this lawsuit was filed. Dr. Kimmell had selected Dr. Hogan to supervise the day-to-day operations of the Animal Health Department's Companion Animal Division, to develop rules and regulations, and serve as a liaison between the Department, the industry and the public. Dr. Hogan's duties were authorized and supervised by Dr. Kimmell. No replacement for Dr. Hogan has yet been named.

Plaintiff has applied for a Kansas license to breed and sell dogs. Plaintiff is licensed to breed and sell dogs by the United States Department of Agriculture. In her business, plaintiff acquires dogs in Kansas and sells them in other states. On September 25, 1989, plaintiff's business, Kerr Kennels, was inspected by Dr. Hogan and Animal Health Department Inspector Shon Koening, pursuant to a Fed.R.Civ.P. 34 request. Plaintiff's facility was found to be excellent and the animals well cared for. No change in the facility's structures would be necessary for state licensure. As of the time defendants' motion was filed on November 15, 1989, plaintiff had found it impossible even to speculate as to any costs she may have incurred as a result of the enactment and implementation of the Kansas Animal Dealers Act. In her response to defendants' motion filed on May 4, 1990, plaintiff states only that the costs of the Kansas Animal Dealers Act, "will be calculable." Defendants' Reply Memorandum, however, filed June 11, 1990, is accompanied by plaintiff's supplemental response to defendants' interrogatories, i.e., Exhibit A. In this exhibit, plaintiff estimates her minimum total cost of the Kansas Act at $759 per year, which includes the cost of the $75 Kansas registration fee and the costs of dual record keeping and inspection. Defendants' Reply also states that on June 11, 1990, Kansas adopted the federal Animal Welfare Act regulations by reference.

Although in her response plaintiff characterizes the remaining additional facts contained in defendants' statement of facts as either "self-serving speculation," or as irrelevant and immaterial, the court finds the additional facts to be essentially uncontroverted. D.Kan. 206(c); Fed.R.Civ.P. 56(e). As of September 8, 1989, there were between 470 and 506 animal dealers in Kansas licensed by both the state and federal governments. The kennel industry in Kansas is made up of numerous dealers located throughout the state. Defendants state that preliminary studies indicate that most puppies acquired from Kansas breeders and brokers are healthy, but that as many of twenty-five per cent (25%) had either congenital defects, health problems or disease. The primary sales product of dog breeders and brokers in Kansas are

puppies under the age of twelve (12) weeks. Puppies are susceptible to a variety of diseases, including Canine Coronavirus Gastroenteritis–Enteritis, Canine Distemper, Infectious Canine Hepatitis, Canine Adenovirus Type 2, Canine Parainfluenza, Leptospira, Canine Paravovirus, and Leptospirosis. These diseases can result in a defective product, an animal which is in pain or even death. Immunizations should begin at six (6) weeks of age and be repeated every two (2) to three (3) weeks prior to the puppies twelfth (12th) week. In addition, sanitary environments and proper feeding are essential for disease control. Defendants also state that preliminary studies indicate that in excess of 179,000 puppies and kittens are potentially produced annually in Kansas. The economic value to the state is estimated in the millions of dollars.

■ A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

■ Defendants make several arguments in support of their motion for summary judgment. As an initial matter, the court finds that it lacks subject matter jurisdiction over defendant Animal Health Department. Under the Eleventh Amendment to the United States Constitution, neither a state nor its agencies may be sued in federal court. *Lee v. McManus*, 589 F.Supp. 633, 638 (D.Kan.1984). It is undisputed that the Animal Health Department is an agency of the State of Kansas. K.S.A. 75–1901. Thus, the court finds that the Animal Health Department must be dismissed as a defendant in this lawsuit. *See Lee*, 589 F.Supp. at 637. The court, however, also finds that the Eleventh Amendment does not bar plaintiff's action against Dr. Kimmell, a state official, for injunctive or declaratory relief. *Id.* See *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Therefore, the court will be addressing plaintiff's claims in relation to Dr. Kimmell as defendant.

■ Plaintiff contends that the Kansas Animal Dealers Act, K.S.A. 47–1701, *et seq.* (Supp.1989) (hereafter, "the Act"), violates the Commerce Clause. Plaintiff argues that by imposing additional state regulation on animal breeders in the state of Kansas, the Act has an impact upon interstate commerce and that the state of Kansas "has no legitimate state interest in protecting consumers outside the state who are the primary beneficiaries of animals bred by the plaintiff when the plaintiff is already federally licensed, regulated and inspected."

Upon examination of plaintiff's arguments and the applicable law, the court finds that no genuine issues of material

fact exist and that the Act does not violate the Commerce Clause. As the Supreme Court stated the rule in *Pike v. Bruce Church, Inc.,* "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), *citing Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960). The court finds that a legitimate local public interest is served by the stated purposes of the Act, i.e., quality control and humane treatment of animals. The uncontested facts before the court show that the breeding of these animals is an important industry in the state, producing approximately 179,000 puppies and kittens and revenues in the millions of dollars per year. Defendant has also cited preliminary studies relating to the diseases affecting these animals which reflect that quality control, i.e., disease prevention, is an important concern to the state.

In contrast to the legitimate interests proffered by the state in support of the Act, plaintiff has not demonstrated that the Act burdens interstate commerce. This is particularly the case since plaintiff concedes that the proposed state regulations "mirror identically" the federal regulations already in force. The court also finds that any burden which may be imposed by the state licensing scheme, including the estimated $759 costs, can be characterized as "incidental," and as such does not offend the Commerce Clause since this minimal burden is not "clearly excessive" in relation to the benefits outlined above. *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. The court finds that the cases cited by plaintiff in support of her position are inapposite, and that plaintiff's arguments that the Act violates the Commerce Clause are without merit.

■ The court moreover finds that the Act is an exercise of the state's traditional police power in relation to domestic animals. *See, e.g., Nicchia v. New York,* 254 U.S. 228, 230–31, 41 S.Ct. 103, 103–04, 65 L.Ed. 235 (1920). This traditional authority is preserved and expressly authorized by the related federal law, as 7 U.S.C. § 2143(a)(8), the savings clause of the federal Animal Welfare Act, expressly provides for additional state regulation in this area. *See also White v. Massachusetts Council of Constr. Employers, Inc.,* 460 U.S. 204, 213, 103 S.Ct. 1042, 1047, 75 L.Ed.2d 1 (1983) ("where state or local action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce"). Therefore, defendants' motion for summary judgment on plaintiff's Commerce Clause claim will be granted.

■ The court finds that plaintiff's claim that the Act violates the Supremacy Clause is similarly meritless. In *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), the Supreme Court stated five ways in which federal law may supersede state law:

(1) where preemption is expressly provided by Congress;

(2) where the scheme of federal regulation is sufficiently comprehensive to leave no room for supplementary state regulation;

(3) where the field is one in which the federal interest is inherently dominant;

(4) where the state law conflicts with the federal law so that compliance with both is not possible; and

(5) where state law stands as an obstacle to the accomplishment and execution of the federal objectives.

In determining whether a particular state regulation is preempted by federal law, the critical inquiry is one of Congressional intent: did Congress, in passing the federal Animal Welfare Act, 7 U.S.C. § 2131–§ 2157, intend to preempt state regulation in this area? *See, e.g., Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375.

■ The court finds that plaintiff has not shown that any of the above-mentioned methods of preemption apply in this case.

To the contrary, it is clear that the federal law does not evince an intent to preempt state regulation of animal welfare. Sections 2143(a)(8) (the savings clause) and 2145(b) of Title 7, United States Code, show that Congress anticipated that states would remain active in this area of traditional state interest.[1] Thus, plaintiff's argument that Congress intended to totally occupy the field of animal welfare is belied by the express language of the federal statute cited above. *See also Winkler v. Colorado Dept. of Health,* 193 Colo. 170, 564 P.2d 107 (1977). The court again finds that the cases cited by plaintiff involving other federal statutes are inapposite, since preemption must be determined on a statute-by-statute basis. The court finds plaintiff's arguments in support of her preemption claim to be without merit; thus, defendants' motion for summary judgment on this claim will be granted.

■ Plaintiff also argues that the Act violates her rights to equal protection under the law since she is regulated under the Act but that breeders and brokers of greyhound breeds are exempt from coverage under this Act. *See* K.S.A. 47–1701(j) (Supp.1989). Plaintiff argues that the distinction between greyhound breeds and all other dogs is arbitrary and without a reasonable basis. Under the rational basis standard of review which plaintiff concedes is applicable in this case, legislative solutions will be respected if the "distinctions drawn have some basis in practical experience," or if some legitimate state interest is advanced. *See South Carolina v. Katzenbach,* 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966). Defendants argue that the Act, which parallels the federal animal welfare law in excluding racing animals, *see* 7 U.S.C. § 2132(g), is a reasonable exercise of legislative judgment and does not regulate greyhounds because

jurisdiction over greyhounds registered with the National Greyhound Association, the only dogs which can participate in a parimutuel race, is vested in the Kansas Racing Commission under the Kansas Parimutuel Racing Act, K.S.A. 74–8801, *et seq.* (Supp.1989).

Given the considerable deference accorded to state legislative decisions under the rational basis test promulgated by the Supreme Court, this court cannot say that the decision of the Kansas Legislature to separately regulate greyhound breeds and all other breeds of dogs is without a rational basis. Thus, on the uncontested facts before the court, the court finds that plaintiff's equal protection claim is without merit.

■ Plaintiff also argues that the Act violates the Fourth Amendment to the United States Constitution. The challenged section of the Act, K.S.A. 47–1707(c) (Supp.1989), states as follows:

(c) Whenever the commissioner has reasonable grounds to believe that a person required to be licensed or registered under this act has failed to comply with or has violated any provision of this act ... and that the health, safety or welfare of animals in such person's possession, custody or care is endangered thereby, the commissioner shall seize and impound such animals using emergency adjudicative proceedings in accordance with the Kansas administrative procedure act....

Plaintiff contends that this provision of the Act is unconstitutional because she alleges that it allows the commissioner to seize animals "without warrant, without judicial review, and without probable cause."

On the uncontested facts before the court, the court finds that it cannot address the merits of plaintiff's claim because no case or controversy concerning the seizure procedure exists. Upon inspection, Kerr's facility was found to be excellent, and the

---

**1.** Section 2145(b) provides:

The Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject.

The savings clause, Section 2143(a)(8), provides:

Paragraph (1) [providing for promulgation of standards for animal handling, care, treatment and transportation by dealers, research facilities and exhibitors] shall not prohibit any State (or political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary under paragraph (1).

animals therein were not found to be endangered. To date, the commissioner has not attempted to seize any of plaintiff's animals, nor is such a seizure presently foreseeable. To reach the merits of plaintiff's constitutional argument on these facts would be tantamount to issuing an advisory opinion, which this court is not empowered to do. U.S. Const. art. III. Otherwise stated, this question is simply not ripe for decision at this time. *See Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588–89, 92 S.Ct. 1716, 1719–20, 32 L.Ed.2d 317 (1972) (stating that even when jurisdiction exists "it should not be exercised unless the case 'tenders the underlying constitutional issues in clean-cut and concrete form'") (citation omitted). Therefore, plaintiff's fourth amendment claim must be dismissed.

IT IS BY THE COURT THEREFORE ORDERED that defendant Animal Health Department is dismissed for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that plaintiff's fourth amendment claim (Count IV of plaintiff's complaint) is dismissed for failure to state a claim upon which relief can be granted/subject matter jurisdiction.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's remaining claims is hereby granted.